**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TERRY MARGHEIM,

     Plaintiff - Appellee,

v.

EMELA BULJKO, Weld County Deputy
District Attorney,

     Defendant - Appellant,

and

KENNETH R. BUCK, Weld County D.A.;
GREELEY POLICE CHIEF; JOHN
BARBER; STEPHEN PERKINS; MR.
ELLIS, unknown name employees of
Greeley Police Department,

     Defendants.

No. 16-1121

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:12-CV-01520-WJM-NYW)
_____

Malcolm S. Mead (Thomas J. Lyons and Mark J. Ratner, with him on the briefs), Hall &
Evans, L.L.C., Denver, Colorado, appearing for Appellant.

Daniel C. Wennogle (Reid A. Page, with him on the brief), Stinson Leonard Street, LLP,
Greenwood Village, Colorado, appearing for Appellee.
_____

Before **MATHESON**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.

_____

Terry Margheim sued Emela Buljko, a deputy district attorney in Colorado, under 42 U.S.C. § 1983 for malicious prosecution in violation of his Fourth Amendment rights. In this interlocutory appeal, Ms. Buljko asks us to reverse the district court's summary judgment order denying her absolute and qualified immunity.

When Ms. Buljko raised the qualified immunity defense in district court, Mr. Margheim had the burden to show a violation of clearly established federal law. He failed to show an essential element of his malicious prosecution claim to establish a constitutional violation. For this reason, we reverse and remand with instructions to grant qualified immunity to Ms. Buljko.

## I. **BACKGROUND**

### A. *Factual History*

This case arose from Mr. Margheim's involvement in three state criminal matters—two domestic violence cases and a later drug case.[1] His malicious prosecution claim is based on his prosecution in the drug case, but the three cases are tied together. Because the timing of events is central to Mr. Margheim's claim, the facts are best expressed chronologically.

_____

[1] Because this case comes to us on summary judgment, we view the facts in the light most favorable to the non-moving party, Mr. Margheim. *See Henderson v. Glanz*, 813 F.3d 938, 951-52 (10th Cir. 2015).

In January 2010, police arrested Mr. Margheim in his Greeley, Colorado home on suspicion of domestic violence against his girlfriend. Weld County prosecutors then initiated a criminal prosecution—the First D.V. Case. To remain free while that case was pending, Mr. Margheim posted a $3,000 bond. As a standard condition of his release, he had to comply with a protection order and avoid contacting his girlfriend.[2]

In March 2010, Mr. Margheim failed to attend a pre-trial conference. The Weld County court issued a warrant for his arrest, ordered the $3,000 bond forfeited, and ruled Mr. Margheim would have to post a new $6,000 bond if he wanted to remain free pending resolution of the First D.V. Case.

On April 10, 2010, police arrested Mr. Margheim. The record reveals little about the circumstances of this arrest, but Weld County prosecutors filed new charges—the Second D.V. Case—based on suspicion Mr. Margheim had violated the protection order. At this point, Mr. Margheim's original bond in the First D.V. Case had been forfeited, and although the Weld County court had announced the new bond would be set at $6,000, Mr. Margheim had yet to post the new bond.

---

[2] Colorado provides by statute that a person charged with a crime is subject to a protection order that "restrain[s] the person charged from harassing, molesting, intimidating, retaliating against, or tampering with any witness to or victim of the acts charged." Colo. Rev. Stat. § 18-1-1001(1).

On April 12, 2010—two days after his arrest—Mr. Margheim posted the new $6,000 bond in the First D.V. Case and was again released.[3]

On April 22, 2010, Ms. Buljko filed a motion in the First D.V. Case requesting the Weld County court (1) revoke the $6,000 bond and (2) issue a warrant for Mr. Margheim's arrest so he could be brought before the court to address the state's motion to revoke bond.

As the basis for her motion, Ms. Buljko said in a sworn statement that Mr. Margheim had "failed to comply with the protection order" and therefore had a "new offense." Aplt. App. at 53. Mr. Margheim's failure to comply with the protection order before his April 10 arrest had led to the charges in the Second D.V. Case. But Mr. Margheim had no "new" offense since posting the $6,000 bond on April 12. Ms. Buljko's April 22 motion to revoke was thus based on conduct that occurred before Mr. Margheim's April 10 arrest, conduct that could not be "new" relative to the $6,000 bond posted April 12. As Ms. Buljko's counsel said at oral argument, "the timing was wrong"; Ms. Buljko's statement to the Weld County court was "incorrect." Oral Arg. at 4:01-27; *see also* Aplt. Br. at 5 (conceding there was no "new offense" relative to the $6,000 bond).

---

[3] Mr. Margheim was required to post a separate $8,000 bond in the Second D.V. Case, but only the $6,000 bond in the First D.V. Case is material to this appeal.

On April 23, the Weld County court issued the arrest warrant based on Ms. Buljko's inaccurate statement.

On May 7, police arrested Mr. Margheim pursuant to the warrant. Incident to that arrest, police searched Mr. Margheim and found drugs. This discovery led Weld County prosecutors to institute a third prosecution—the Drug Case. According to his complaint here, Mr. Margheim was held in pre-trial detention in the Drug Case for approximately six months.

Before the Drug Case went to trial, Mr. Margheim moved to suppress the drug evidence. The Weld County court granted that motion after concluding the arrest warrant on which Mr. Margheim had been arrested lacked probable cause due to Ms. Buljko's inaccurate statement. Soon after the court granted Mr. Margheim's motion to suppress, the Weld County District Attorney's Office dismissed the Drug Case.

## B. *Procedural History*

In June 2012, Mr. Margheim filed this lawsuit in federal court. His operative complaint asserted a single claim for malicious prosecution against Ms. Buljko in both her individual and official capacities. Mr. Margheim alleged Ms. Buljko's false statement in the arrest warrant application led to the issuance of the warrant, his arrest, the discovery of the drugs, the drug charge, and his prolonged pre-trial detention.

Ms. Buljko moved for summary judgment. She argued: (1) Mr. Margheim's claim failed as a matter of law; (2) her actions as a prosecutor entitled her to absolute immunity; (3) she was entitled to qualified immunity; and (4) the Eleventh Amendment barred the claim against her in her official capacity.

The district court granted summary judgment to Ms. Buljko on the official capacity claim, and that issue is not before us. The court otherwise denied Ms. Buljko's motion. This interlocutory appeal concerns the district court's order denying her absolute and qualified immunity on the individual capacity claim.

The district court looked to our decision in *Wilkins v. DeReyes*, 528 F.3d 790 (10th Cir. 2008), for the elements a § 1983 plaintiff must show to establish a malicious prosecution claim:

> (1) the defendant caused the plaintiff's continued confinement or prosecution;
>
> (2) the original action terminated in favor of the plaintiff;
>
> (3) no probable cause supported the original arrest, continued confinement, or prosecution;
>
> (4) the defendant acted with malice; and
>
> (5) the plaintiff sustained damages.

*Id.* at 799.

Ms. Buljko argued Mr. Margheim's claim failed on the second element—favorable termination—because he pled guilty in the First D.V. Case. The district court rejected this argument. The relevant case, the court ruled, was not the First D.V. Case but rather the Drug Case because Mr. Margheim's theory of liability was that Ms. Buljko's application for the arrest warrant led to his pre-trial detention in the Drug Case. The district court then ruled the Drug Case ended favorably for Mr. Margheim because

the charges were dismissed.[4]  It concluded Ms. Buljko was "not presently entitled" to summary judgment.  Aplt. App. at 163.[5]

The district court expressed concern, however, about advancing the case to a jury based on Mr. Margheim's meager evidence on the malice element.  His theory, the court observed, seemed to be that Ms. Buljko had not carefully reviewed his file to check on the timing of events before she filed the motion to revoke and accompanying arrest warrant application.  In the court's view, this was a negligence theory and would be insufficient as a matter of law.

The district court invited Ms. Buljko to file a supplemental summary judgment motion "focused specifically on the malice element."  *Id.* at 170.  It included this invitation as part of its order denying summary judgment on March 11, 2016.  Ms. Buljko had one month to file the supplemental motion.

She did not accept the district court's invitation, at least not right away.  On April 8, 2016, she filed this interlocutory appeal seeking our review of the district court's March 11 order.  While simultaneously litigating this appeal, she filed a supplemental summary judgment motion in district court addressing the malice element.

---

[4] Ms. Buljko made additional arguments about the other elements, but the district court similarly rejected them because they were based on an assumption that the First D.V. Case was the relevant prosecution.

[5] Based on *Kalina v. Fletcher*, 522 U.S. 129, 131 (1997), which held prosecutors are not entitled to absolute immunity when they adopt the role of a complaining witness, the district court also ruled Ms. Buljko was not entitled to absolute immunity for attesting to the fact of the "new" offense in her motion. Because we conclude Ms. Buljko is entitled to qualified immunity, we do not reach the issue of absolute immunity.

On June 8, 2016, Ms. Buljko filed a "Notice Concerning Jurisdiction," alerting the district court that initiation of this appeal had divested it of jurisdiction.[6] On June 17, the district court entered an order agreeing it no longer had jurisdiction over the case. It then denied without prejudice Ms. Buljko's supplemental summary judgment motion and ordered the case administratively closed.

## II. **JURISDICTION**

"Ordinarily, orders denying summary judgment are not appealable final orders for purposes of 28 U.S.C. § 1291," our usual source of appellate jurisdiction. *Henderson v. Glanz*, 813 F.3d 938, 947 (10th Cir. 2015) (quotations and alterations omitted). The collateral order doctrine nevertheless allows us to review certain orders under § 1291 even when there is no final judgment. *Id.* Our cases establish that "the denial of qualified immunity to a public official is immediately appealable under the collateral order doctrine to the extent it involves abstract issues of law." *Id.* (quotations and alterations omitted).

---

[6] *See Stewart v. Donges*, 915 F.2d 572, 574 (10th Cir. 1990) (articulating "axiomatic premise that a federal district court and a court of appeals should not attempt to assert jurisdiction over a case simultaneously" (quotations omitted)); *id.* ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." (quotations omitted)); *see also Walker v. City of Orem*, 451 F.3d 1139, 1146 (10th Cir. 2006) (holding this rule applies even when continuation of district court proceedings would benefit a § 1983 defendant); *id.* at 1146-47 (noting appealing party who wants to return to district court has option to abate appeal and request remand).

Mr. Margheim challenges our jurisdiction insofar as this appeal involves "merits-based issues," which he distinguishes from the immunity questions he says are properly before us. Aplee. Br. at 1-2.

As a federal court of limited jurisdiction, we have an independent obligation to confirm that our jurisdiction is proper, *see Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), and here that obligation is easily discharged for two reasons. First, appellate courts have jurisdiction over interlocutory appeals concerning the legal determination of immunity issues like those at issue in this case. *See Mitchell v. Forsyth*, 472 U.S. 511, 525-27 (1985) (stating denial of absolute or qualified immunity is immediately appealable). Second, Mr. Margheim's distinction between merits issues and immunity issues is a false one. As discussed below, whether his version of the facts amounts to a violation of federal law is encompassed within the qualified immunity inquiry. Our jurisdiction over Ms. Buljko's interlocutory appeal is proper.

## III. **DISCUSSION**

We begin by discussing the applicable law and our standard of review. We then analyze Mr. Margheim's malicious prosecution claim and conclude he has failed to show a violation of his Fourth Amendment rights because he has not satisfied the favorable termination element of his claim. Accordingly, we conclude Ms. Buljko is entitled to qualified immunity.

A. *Legal Background*

We address (1) § 1983 generally, (2) Fourth Amendment malicious prosecution claims, (3) the favorable termination element of such a claim, and (4) the doctrine of qualified immunity.

1. **Claims Under 42 U.S.C. § 1983**

Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016) (explaining "[t]here can be no 'violation' of § 1983" because the statute "is a remedial vehicle"). Section 1983 does not allow plaintiffs to create a federal case out of "every violation of state common law." *Pierce v. Gilchrist*, 359 F.3d 1279, 1285 (10th Cir. 2004). Accordingly, "[t]he first inquiry in any § 1983 suit . . . is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws.'" *Baker*, 443 U.S. at 140 (quoting 42 U.S.C. § 1983).

2. **Fourth Amendment Malicious Prosecution Claim**

The Fourth Amendment provides one source of rights enforceable in a § 1983 action. *See, e.g.*, *Gutierrez v. Cobos*, 841 F.3d 895, 898 (10th Cir. 2016) (addressing § 1983 claims for excessive force, unlawful entry, and unlawful seizure based on the Fourth Amendment). As the Supreme Court recently reconfirmed, the Fourth

Amendment provides a basis under § 1983 for challenging pre-trial detention. *Manuel v. City of Joliet*, 137 S. Ct. 911, 914-15 (2017).

*Manuel* did not address whether the tort of malicious prosecution, as opposed to some other common law cause of action,[7] provides an appropriate framework for these Fourth Amendment § 1983 claims. *See id.* at 920-22 (describing issues left on remand); *see id.* at 923 (Alito, J., dissenting) (stating majority had not resolved "whether a claim of malicious prosecution may be brought under the Fourth Amendment"); *see also Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007) ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, and we do not do so here." (citation omitted)). *Manuel*'s discussion of Fourth Amendment rights enforceable in a § 1983 action is nevertheless instructive.

The Court held that § 1983 can support a Fourth Amendment claim concerning pre-trial detention even after the institution of "legal process," which in *Manuel* was a

---

[7] As we have explained in past cases,

> courts have used the common law of torts as a "starting point" for determining the contours of claims of constitutional violations under § 1983. . . . In some instances, a common law tort is sufficiently analogous to the alleged constitutional violation that its common law elements are grafted onto and themselves become elements of a § 1983 constitutional tort. But not all § 1983 actions have a common law analog, and no § 1983 action depends entirely on a common law analog to define its elements.

*Becker v. Kroll*, 494 F.3d 904, 913-14 (10th Cir. 2007) (quotations and internal citation omitted); *see also Pierce*, 359 F.3d at 1288-90 (explaining common law rules "are applicable by analogy—but only by analogy—to constitutional torts" because "the ultimate question is the existence of a constitutional violation").

- 11 -

judge's probable cause determination at the first appearance of the defendant (who later became the § 1983 plaintiff). *Manuel*, 137 S. Ct. at 914-15, 919-20 (majority opinion). We have said "the issuance of an arrest warrant" is "a classic example of the institution of legal process." *Wilkins*, 528 F.3d at 799.

Although the Supreme Court has not addressed whether a § 1983 malicious prosecution claim can be used to enforce Fourth Amendment rights, "[w]e have repeatedly recognized in this circuit that, at least prior to trial, the relevant constitutional underpinning for a claim of malicious prosecution under § 1983 must be the Fourth Amendment's right to be free from unreasonable seizures." *Becker v. Kroll*, 494 F.3d 904, 914 (10th Cir. 2007) (quotations omitted); *accord Sanchez v. Hartley*, 810 F.3d 750, 755 (10th Cir. 2016) (citing cases).[8]

Under our case law, whether a malicious prosecution claim for pre-trial detention can be brought depends on the initiation of legal process. "Unreasonable seizures imposed *without* legal process precipitate Fourth Amendment false imprisonment claims. Unreasonable seizures imposed *with* legal process precipitate Fourth Amendment

---

[8] We have said in other cases that "a § 1983 malicious prosecution claim need not always rest on the right to be free from unreasonable searches and seizures under the Fourth Amendment." *Wilkins*, 528 F.3d at 797 n.4 (citing cases and discussing procedural due process). *But see Becker*, 494 F.3d at 917-22 (rejecting malicious prosecution procedural due process claims). We need not concern ourselves here with any constitutional provision other than the Fourth Amendment. Although an earlier version of Mr. Margheim's complaint styled his claim for relief as "Due Process/ Malicious Prosecution/ 4th Amendment," Aplt. App. at 27 (capitalization altered), his operative complaint has only a Fourth Amendment claim. The district court analyzed his claim using the Fourth Amendment framework discussed above, and Mr. Margheim does not argue on appeal that this was error or that he has a separate claim predicated on due process.

malicious-prosecution claims." *Myers v. Koopman*, 738 F.3d 1190, 1194 (10th Cir.

2013) (emphasis added) (citation omitted).

As mentioned above, our precedent recognizes five elements for a Fourth

Amendment malicious prosecution claim under § 1983:

> (1) the defendant caused the plaintiff's continued confinement or prosecution;
>
> (2) the original action terminated in favor of the plaintiff;
>
> (3) no probable cause supported the original arrest, continued confinement, or prosecution;
>
> (4) the defendant acted with malice; and
>
> (5) the plaintiff sustained damages.

*Wilkins*, 528 F.3d at 799. In a case like this one where the arrest was based on a warrant,

the third element concerns the probable cause determination at the time the warrant was

issued and thus supplies the link to legal process. *Id.* (describing "the issuance of an

arrest warrant" as "a classic example of the institution of legal process").[9] The plaintiff's

challenge to the process (not merely the confinement) is the mark of a malicious

prosecution claim. *See id.* at 798.

"A malicious-prosecution claim is not cognizable until all the elements are

satisfied," and in the ordinary case the last element satisfied, in a chronological sense, is

termination of the original action in the § 1983 plaintiff's favor. *Myers*, 738 F.3d at

1195.

---

[9] If, by contrast, the plaintiff were arrested without a warrant, "a plaintiff can challenge the probable cause determination made during the constitutionally-required probable cause hearing." *Wilkins*, 528 F.3d at 798.

- 13 -

3. **The Favorable Termination Element**

We have said that, to qualify as favorable, the termination of the original criminal proceeding "must in some way indicate the innocence of the accused." *Cordova v. City of Albuquerque*, 816 F.3d 645, 651 (10th Cir. 2016) (quotations omitted). Two cases illustrate the indicative-of-innocence principle.

First, in *Wilkins*, we found a dismissal of criminal charges constituted a favorable termination when the prosecutor filed a *nolle prosecui*—a voluntary dismissal of the charges. 528 F.3d at 803-04. But the fact of the dismissal was not in itself sufficient to establish that the termination was "favorable" for the § 1983 plaintiffs. *Id.* at 802-03. Because the dismissal was consistent with guilt as well as innocence, we looked "to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence." *Id.* at 803.

We held in *Wilkins* the dismissal was favorable. *Id.* The plaintiffs (then criminal defendants) had not engaged in any misconduct in hiding evidence or otherwise preventing "a fair hearing of the cause." *Id.* at 804 (quotations omitted). The charges were not dismissed because of any plea agreement but rather because "of a judgment by the prosecutor that the case could not be proven beyond a reasonable doubt," which followed the trial court's determination that certain witness statements would be excluded as inadmissible hearsay. *Id.* at 795, 803-04. The exclusion of this evidence led the prosecutor to "conclud[e] that without the excluded testimony he could not prove the charged crimes beyond a reasonable doubt." *Id.* at 804. For these reasons, we held this

- 14 -

dismissal was a favorable termination, but we contrasted it with dismissals based on orders suppressing evidence "on 'technical' grounds having no or little relation to the evidence's trustworthiness." *Id.* (quotations omitted). A dismissal following such an order, we said, "would not be indicative of innocence." *Id.* (quotations omitted).

Second, in *Cordova*, we considered whether a dismissal on speedy trial grounds constituted a favorable termination. "Although the dismissal . . . certainly worked to Cordova's benefit," we concluded "it was not a favorable termination." 816 F.3d at 650-51. We said the dismissal on these "technical, procedural grounds[,] which had nothing to do with the merits of the case," was not favorable when "Cordova ha[d] not presented any argument" that the delay was tied to "the prosecution's misgivings about the likelihood of a conviction." *Id.* at 651. Nor was Cordova's "statutory right to dismissal" on speedy trial grounds enough to "set aside his burden of meeting the indicative-of-innocence requirement." *Id.* at 653. This result was hardly unique, we explained, because courts applying the indicative-of-innocence rule "often find that no favorable termination has occurred despite the exercise of statutory or constitutional rights resulting in the termination of a case." *Id.*; *see also id.* at 653 n.2 (citing cases finding prosecutorial abandonment following suppression of evidence on constitutional grounds was not "favorable").

In summary, our cases require us to look to the "stated reasons for the dismissal as well as to the circumstances surrounding it" to determine if "the dismissal indicates the accused's innocence." *Wilkins*, 528 F.3d at 803. "[A] plaintiff generally cannot maintain a malicious prosecution action unless his charges were dismissed in a manner indicative

- 15 -

of innocence, even when he was entitled to dismissal on statutory or constitutional grounds." *Cordova*, 816 F.3d at 653.

4. **Qualified Immunity**

"Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (alteration, citation, and quotations omitted). "Once an individual defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Gutierrez*, 841 F.3d at 900 (quotations omitted). Mr. Margheim is pursuing a malicious prosecution claim, and therefore, to satisfy the first part of his burden, he must show the five elements of his claim to establish a Fourth Amendment violation.

B. *Standard of Review*

When a defendant moves for summary judgment on the basis of qualified immunity, we review the district court's denial of that motion de novo. *Henderson*, 813 F.3d at 951. "In applying this standard, we construe the evidence in the light most favorable to the plaintiff as the nonmoving party." *Id.* at 951-52 (quotations and alteration omitted). "[W]e must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct." *Id.* at 952. As to the malicious prosecution claim at issue here, we review de novo the legal question of

whether a termination was "favorable." *See Murphy v. Lynn*, 118 F.3d 938, 950 (2d Cir. 1997).

## C. *Analysis*

At the outset, we clarify that Mr. Margheim's claim is based on his prosecution in the Drug Case. We then address Ms. Buljko's failure to preserve her argument as to the favorable termination element. Exercising our discretion to consider this legal issue, we conclude Mr. Margheim has failed to show termination of the Drug Case was "favorable." Finally, we turn to Mr. Margheim's counter arguments and find them unavailing. We therefore reverse the denial of Ms. Buljko's motion for summary judgment based on qualified immunity.

### 1. **The Drug Case Is the Relevant Action**

The Drug Case forms the basis of Mr. Margheim's malicious prosecution claim. Ms. Buljko argues, as she did in the district court, that Mr. Margheim cannot satisfy the favorable termination element because he pled guilty *in the First D.V. Case*. Like the district court, we reject this argument because "[Mr.] Margheim has clearly stated his theory that [Ms.] Buljko's bond-revocation warrant led to his wrongful prosecution *in the Drug Case*." Aplt. App. at 162. It is for Mr. Margheim, as the plaintiff, to pursue the theory of liability he deems best, and it is not for Ms. Buljko to decide which case serves as the basis for his claim. *See Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913) ("[T]he party who brings a suit is master to decide what law he will rely upon . . . ."); *Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011) ("Generally, the plaintiff is the master of his complaint . . . .").

- 17 -

2. **Reaching the Favorable Termination Issue**

Ms. Buljko makes a new argument on appeal that the dismissal of the Drug Case was not "favorable" because it did not indicate Mr. Margheim was innocent of the drug charges. We choose to exercise our discretion and consider this argument.

In her district court memorandum in support of summary judgment, Ms. Buljko argued the First D.V. Case did not result in a favorable termination. After Mr. Margheim's response memorandum made clear the relevant prosecution was the Drug Case, Ms. Buljko continued to argue in her reply that the First D.V. Case was the relevant prosecution. Her reply also contained one undeveloped argument that if the Drug Case were the relevant prosecution, Mr. Margheim could not "maintain any of the necessary elements." Aplt. App. at 119.

Even assuming she preserved a generic argument about the Drug Case, Ms. Buljko's specific argument about favorable termination of the Drug Case is new on appeal. She now contends Mr. Margheim cannot satisfy the favorable termination element because, under *Wilkins* and *Cordova*, the dismissal of the Drug Case after the suppression order is insufficiently indicative of innocence to qualify as favorable. Mr. Margheim responds that Ms. Buljko forfeited this argument by failing to raise it in the district court and that we should therefore not consider it. Aplee. Br. at 4 (citing *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127 (10th Cir. 2011)). We agree that she forfeited her favorable termination argument.

Normally when a party presents a new argument on appeal and fails to request plain error review, we do not address it. *See Richison*, 634 F.3d at 1130-31. But even

- 18 -

when a party waives an issue, our precedent affords us "discretion to raise and decide issues sua sponte, even for the purpose of reversing a lower-court judgment," because "[w]aiver . . . binds only the party, not the court." *Planned Parenthood of Kan. & Mid-Mo. v. Moser*, 747 F.3d 814, 837 (10th Cir. 2014); *see also Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."). We have similarly said of forfeited arguments: "Our discretion allows us to determine an issue raised for the first time on appeal if it is a pure matter of law and its proper resolution is certain." *Cox v. Glanz*, 800 F.3d 1231, 1246 n.7 (10th Cir. 2015) (quotations omitted); *see also Avenue Capital Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 886 (10th Cir. 2016) ("[E]ven for matters of law, we decline to consider newly presented legal arguments unless the proper legal disposition is beyond reasonable doubt.").

Although this discretion should be exercised only sparingly, *see United States v. Jarvis*, 499 F.3d 1196, 1202 (10th Cir. 2007) ("This court has characterized its willingness to exercise its discretion to hear issues not raised below only in the most unusual circumstances." (quotations omitted)), this case is a strong candidate to reach Ms. Buljko's favorable termination argument for a combination of four reasons.

First, whether a termination was "favorable" presents a legal question, and, as we demonstrate below, its proper resolution is certain. *See Cox*, 800 F.3d at 1256 n.7.

Second, our consideration of Ms. Buljko's argument is consistent with the purpose of qualified immunity, especially in light of the certain resolution of the legal question.

As the Supreme Court has explained, qualified immunity "is an *immunity from suit* rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526 (emphasis in original). Because that immunity "is effectively lost" when a case is allowed to proceed, *id.*, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotations omitted).

Third, explaining why we reached the defendant-appellant's unpreserved argument in *Cox*, we noted the § 1983 plaintiff-appellee's "feeble efforts" to oppose summary judgment as a consideration "in deciding whether to recognize the forfeiture." 800 F.3d at 1245. Here, in three sentences devoid of legal argument, Mr. Margheim asserted in opposition to summary judgment that dismissal of the Drug Case satisfied the favorable termination element. *See* Aplt. App. at 115-16. Although Ms. Buljko did not challenge that assertion specifically, she lodged a general objection to Mr. Margheim's use of the Drug Case. *See id.* at 119. Her undeveloped opposition was not enough to preserve the argument she now makes, but we said in *Cox* that § 1983 plaintiffs have "unique briefing burdens . . . in the qualified-immunity context," 800 F.3d at 1245, and Mr. Margheim's efforts on summary judgment were far from robust.

Fourth, because the district court ruled on this issue and agreed with Mr. Margheim that the termination was favorable, both parties had full opportunity to argue—and did argue—this issue on appeal. *See Jarvis*, 499 F.3d at 1202 ("We have justified our decision to exercise discretion in these situations because . . . both parties had the opportunity to address the issue in their appellate briefing."); *see also Anixter*, 77

- 20 -

F.3d at 1228-29 (exercising discretion to reach issue that was "extensively briefed on appeal").

As we explain below, Ms. Buljko is entitled to qualified immunity. We choose to consider Ms. Buljko's favorable termination argument so that we may reach the proper legal conclusion at this stage.

### 3. **Mr. Margheim Failed to Show a Favorable Termination**

Dismissal of the Drug Case was not a favorable termination for malicious prosecution purposes. To count as favorable, "the termination must in some way indicate the innocence of the accused." *Cordova*, 816 F.3d at 651 (quotations omitted). Mr. Margheim won a suppression motion to exclude the drug evidence. The prosecutor, lacking this evidence, dismissed the case. Dismissal based on the suppression of evidence "on 'technical' grounds having no or little relation to the evidence's trustworthiness" is not "favorable" under our case law to support a malicious prosecution claim. *Wilkins*, 528 F.3d at 804 (quotations omitted). Mr. Margheim won his suppression motion because the arrest warrant that led to the search was invalid. He has not presented any information questioning whether he actually possessed the drugs or whether the substances found were anything other than illegal narcotics. *See* Aplt. App. at 133 (Mr. Margheim's deposition testimony admitting police found narcotics in his possession when they arrested him). Under these circumstances, the dismissal of the Drug Case was not a favorable termination.

Mr. Margheim has thus failed to establish one of the five elements necessary for his malicious prosecution claim. *See Wilkins*, 528 F.3d at 799 (listing favorable

termination among the elements of a malicious prosecution); *see also Heck v. Humphrey*, 512 U.S. 477, 484 (1994) ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused.").

As a result, he has not established a constitutional violation and therefore cannot surmount the first part of his burden to overcome qualified immunity. *See Snider v. Seung Lee*, 584 F.3d 193, 201 (4th Cir. 2009) ("Because there was no favorable outcome . . . as necessary to support Snider's malicious prosecution claim . . . Snider fails on the threshold inquiry of whether she alleged the violation of a constitutional right."). Having established that Mr. Margheim failed to make out a constitutional violation, we need not address the clearly established law inquiry of the qualified immunity analysis.

We can conclude the district court erred in denying Ms. Buljko qualified immunity.

4. **Mr. Margheim's Counter-Arguments**

Although Mr. Margheim argued we should not consider whether the Drug Case was favorably terminated, he briefed three arguments on the favorable termination issue. None is persuasive.

First, he argues that he need not show a favorable termination because "[t]o succeed on a § 1983 malicious prosecution claim, one need not prove every element of the state law tort of malicious prosecution." Aplee. Br. at 36. He emphasizes that common law torts do not necessarily control the workings of § 1983 claims. *Id.*; *see*

- 22 -

*Pierce*, 359 F.3d at 1290 (explaining common law principles serve as a "starting point" for vindication of constitutional rights through § 1983 actions).  Mr. Margheim's argument misses the important point that, in our circuit, the elements of § 1983 malicious prosecution claims are already established.  *See Wilkins*, 528 F.3d at 799 (discussing the five elements).  His failure to show a favorable termination is fatal.

Second, he argues there was a favorable termination if we look not to the Drug Case but to his successful demonstration within the Drug Case suppression hearing that the warrant was invalid.  *See* Aplee. Br. at 37 (arguing "the true 'original proceeding' at the heart of [his] claim had no case number").  But Mr. Margheim confuses the second malicious prosecution element (favorable termination) with the third element (no probable cause supported the original arrest).  *See Wilkins*, 528 F.3d at 799.  In the suppression proceeding, Mr. Margheim prevailed by successfully arguing there was no probable cause to support his arrest warrant, but that does not establish a favorable termination of the Drug Case under cases like *Wilkins* and *Cordova*.

Third, Mr. Margheim argues he has satisfied the first prong of the qualified immunity test because "[a] Fourth Amendment violation definitely occurred here." Aplee. Br. at 38.  He points to his arrest "under a facially valid, but legally invalid warrant" as the source of the violation.  *Id.*  Regardless of whether Mr. Margheim could make out a claim for false arrest or any other Fourth Amendment violation, he has chosen to pursue a malicious prosecution claim.  As already discussed, that choice requires him to show the five malicious prosecution elements, including favorable termination of the original action.  He has not done that.

- 23 -

## IV.  CONCLUSION

We reverse the district court's summary judgment order and remand with instructions to grant Ms. Buljko qualified immunity.[10]

---

[10] We grant Ms. Buljko's unopposed motion to seal portions of the appendix consistent with the restricted access imposed during the district court proceedings.