**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 8, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MATTHEW MALONE, individually, and as a Personal Representative of Michael Malone, deceased,

      Plaintiff - Appellee,

v.

BOARD OF COUNTY COMMISSIONERS FOR THE COUNTY OF DONA ANA, in their official capacities; CHASE THOUVENELL, in his individual and official capacity,

      Defendants - Appellants,

and

THE CITY OF LAS CRUCES, NEW MEXICO; JOHN DOES, unknown Las Cruces Police Department officers, in their individual and official capacities,

      Defendants.

No. 16-2222
(D.C. No. 2:15-CV-00876-JB-GBW)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **EBEL**, and **MATHESON**, Circuit Judges.
_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

In this interlocutory appeal, Defendant-Appellant Chase Thouvenell contends that the district court erred in denying him qualified immunity from a 42 U.S.C. § 1983 claim asserted by the personal representative of the estate of Michael Malone ("Malone"), alleging that Deputy Thouvenell violated the Fourth Amendment when he shot and killed Malone while trying to arrest him. We conclude that Thouvenell is entitled to qualified immunity because Malone failed to show that Thouvenell violated clearly established law. Therefore, having jurisdiction under 28 U.S.C. § 1291, see Mitchell v. Forsyth, 472 U.S. 511, 530 (1985), we reverse.[1]

## I. BACKGROUND

The evidence, viewed in the light most favorable to Malone, the non-moving party, see White v. Pauly, 137 S. Ct. 548, 550 (2017) (per curiam), indicated the following: On July 29, 2015, Michael Malone's wife, Crystal, met with a detective from the Dona Ana County, New Mexico, Sheriff's Office, and told the detective that, five days earlier, her husband had choked and punched her, and then had pointed a revolver at the back of Crystal's head and pulled the trigger. The gun did not go off. Crystal then left the house, with Malone giving chase; during the chase, he continued to point the gun at Crystal and pull the trigger, but the gun never fired. Crystal eventually escaped to a neighbor's home, where she initially reported the attack to police.

---

[1] In light of our resolution of Thouvenell's appeal, we lack jurisdiction over the interlocutory appeal taken by the Board of County Commissioners for Dona Ana County and, therefore, DISMISS the County's appeal on that basis. See Lynch v. Barrett, 703 F.3d 1153, 1163-64 (10th Cir. 2013).

2

Crystal further told the detective that Malone had called her after the attack, threatening to commit suicide. "His threat included the sound of Malone rotating the cylinder on the revolver and then pulling the trigger resulting in a gun shot." (Aplt. App. 157.) Crystal also informed the detective that Malone was a convicted felon, and the detective verified that was the case. After interviewing Crystal, the detective "filed a criminal complaint against Malone for aggravated assault with a deadly weapon on a household member, possession of a firearm by a felon, and battery against a household member," and obtained a warrant for Malone's arrest. (Id. 157-58 (internal quotation marks omitted).)

The Sheriff's Office decided a "Special Response Team" ("SRT") was needed to execute the arrest warrant. An SRT is used to execute warrants under "hazardous circumstances," such as when "a suspect is armed and may use weapons against law enforcement officers or where the suspect's background reveals a propensity toward violence." (Id. 158-59 (quoting id. at 55).) In this situation, the SRT located Malone at a motel where they discovered he was staying with a woman in Room 103. The lead detective called Malone's cell phone, advised him that the Sheriff's Office wanted to talk to Malone about an incident involving his wife, and asked him to turn himself in. Malone refused. Several SRT members then went to Room 103, knocked, and spoke to a woman who answered the door.

Deputy Thouvenell, along with another deputy, Sanchez, positioned themselves in "an alleyway on the side of the . . . Motel where Room 103 was located" in case Malone attempted to "flee the area by escaping out a back window or

3

door." (Id. 172, 174 (internal quotation marks omitted).) "Thouvenell and Sanchez suddenly heard a noise coming from the alley between the Motel and Family Dollar [store]. They looked into the alleyway as Malone, while holding a revolver, was attempting to climb a chain-link fence immediately in front of them. The Deputies repeatedly commanded Malone to drop the revolver. Instead, Malone jumped off the fence . . . ." (Id. 175.) At this point, Malone and the deputies were three to four feet apart, with only the chain-link fence separating them.

> Malone jumped off the fence[,] started to back away from Sanchez and Thouvenell while still holding the revolver in his right hand[, and lowered his arms]. Both Thouvenell and Sanchez commanded Malone to drop the weapon several times yet Malone continued to back away from them with the weapon in his hand. Ultimately, Thouvenell, fearing for his, the public's and Sanchez's safety, fired three shots at Malone.

(Id. (quoting Defendants' summary-judgment motion, with alterations made by the district court).) Malone died as a result of these shots. "While the evidence submitted does not indicate the precise time frame during which all of this happened, it appears to be several seconds." (Id. 263.)

Matthew Malone, the personal representative of Michael Malone's estate, initiated this litigation, asserting both federal- and state-law claims against several defendants. The only claim at issue in this interlocutory appeal is Malone's § 1983 claim against Thouvenell, in his individual capacity, alleging that the deputy "used excessive force when he shot and killed Michael Malone without proper cause or provocation," in violation of the Fourth Amendment (Aplt. App. 17). Thouvenell moved for summary judgment on that claim, asserting he is entitled to qualified

4

immunity. The district court denied Thouvenell's motion, and he immediately appealed. This court has jurisdiction under 28 U.S.C. § 1291 to consider Thouvenell's interlocutory appeal from the denial of qualified immunity, "so long as the appeal raises only abstract legal questions." Stanley v. Gallegos, 852 F.3d 1210, 1212 (10th Cir. 2017); see also Mitchell, 472 U.S. at 530.[2]

## II. STANDARD OF REVIEW

We review the district court's summary judgment decision de novo, see Pompeo v. Bd. of Regents of the Univ. of N.M., 852 F.3d 973, 981 (10th Cir. 2017), viewing the evidence in the light most favorable to Malone, the non-moving party, see White, 137 S. Ct. at 550. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

In order to survive a summary-judgment motion based on qualified immunity, the burden was on Malone to show both 1) that Thouvenell's conduct violated

[2] On appeal, Deputy Thouvenell asserts that there was no evidence to support the fact, recognized by the district court, that Malone lowered his arms once he jumped down from the fence, nor to support the inference the district court drew that "Malone was in the process of complying with police commands by jumping off the fence, backing up, and lowering his arms." (Aplt. App. 264.) We have no jurisdiction, however, in this interlocutory appeal, to consider whether "the district court erred in determining that an alleged fact was supported by sufficient evidence." Tenorio v. Pitzer, 802 F.3d 1160, 1161 (10th Cir. 2015) (citing cases), cert. denied, 136 S. Ct. 1657 (2016). Nor do we have "jurisdiction at this stage to review . . . [whether] a plaintiff's evidence is sufficient to support a particular factual inference." Fancher v. Barrientos, 723 F.3d 1191, 1193, 1199 (10th Cir. 2013) (internal quotation marks omitted). We, therefore, accept the facts as set forth by the district court.

Malone's Fourth Amendment right, and 2) that that Fourth Amendment right was clearly established at the time Thouvenell undertook the challenged conduct. See Margheim v. Buljko, 855 F.3d 1077, 1087 (10th Cir. 2017). Because we can consider these two inquiries in any order, see Pearson v. Callahan, 555 U.S. 223, 236 (2009), we begin, and end, with the second inquiry, concluding Malone failed to establish that Thouvenell violated clearly established Fourth Amendment rights.

"For the law to be 'clearly established,' there ordinarily must be a Supreme Court or Tenth Circuit opinion on point, or the clearly established weight of authority from other circuits must point in one direction." Pompeo, 852 F.3d at 981. The Supreme Court has warned not to define a clearly established right "at a high level of generality." White, 137 S. Ct. at 552 (internal quotation marks omitted). Instead, "the clearly established law must be particularized to the facts of the case." Id. (internal quotation marks omitted). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Pompeo, 852 at 981 (internal quotation marks omitted); see also White, 137 S. Ct. at 551. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted).

"Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to

6

determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." Id. (internal quotation marks omitted). For example, in Mullenix, an excessive-force case, the Supreme Court rejected as too general the "rule that a police officer may not use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." Id. at 308-09 (internal quotation marks omitted). Instead, the relevant inquiry into whether the law at issue there was clearly established had to incorporate the particular facts presented in that case, asking: whether it was clearly established that the use of deadly force against "a reportedly intoxicated fugitive, set on avoiding capture through high-speed vehicular flight, who twice during his flight had threatened to shoot police officers, and who was moments away from encountering an officer" violated the Fourth Amendment. Id. at 309.

Mullenix also cited to Brosseau v. Haugen, 543 U.S. 194, 199-200 (2004) (per curiam), in which the Supreme Court framed the question as "whether it was clearly established that the Fourth Amendment prohibited the officer's conduct in the 'situation [she] confronted': whether to shoot a disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight." Mullenix, 136 S. Ct. at 309 (quoting and discussing Brosseau).

Applying the Supreme Court's guidance here, the parties do not cite, nor could we find, any Supreme Court or Tenth Circuit case that is sufficiently close factually to the circumstances presented here to establish clearly the Fourth Amendment law that applies to our case. The cases Malone mentions in his brief are not sufficiently

7

analogous. In <u>Thomson v. Salt Lake County</u>, this court held the use of deadly force was justified where a domestic violence suspect had just pointed a gun at his wife and then fled; threatened officers' safety over the phone; and when cornered by officers and a police dog, the suspect threatened to shoot, moved his rifle very quickly, at times pointing it at officers, and refused to drop the rifle when ordered to do so. 584 F.3d 1304, 1309-11, 1318-20 (10th Cir. 2009). And in <u>Phillips v. James</u>, this Court again concluded that the use of deadly force was justified where a suspect barricaded himself in his home and refused to come out, threatened to shoot officers who were surrounding the home, bragged to those officers about previously pulling a gun on a sheriff's deputy, left the house briefly to note the location of the officers surrounding the home, returned to the home, propped open a window, knocked out the window's screen and stated to the surrounding officers that he had a clean shot. 422 F.3d 1075, 1078-79, 1084 (10th Cir. 2005). These cases, in which the use of deadly force was reasonable, are not sufficiently analogous to the facts presented here to inform a reasonable officer faced with the situation in which Thouvenell found himself that the use of deadly force would, instead, violate the Fourth Amendment. See <u>Mullenix</u>, 136 S. Ct. at 308.

Nor do <u>Thomson</u> and <u>Phillips</u> establish, as the district court concluded, that to justify the use of deadly force, the suspect must have made "some verbal threat or gesture directed at the officers." (Aplt. App. 270.) Such a per se rule contradicts the Supreme Court's mandate that a court determine the reasonableness of an officer's use of deadly force based on the totality of the circumstances. See <u>Graham v.</u>

8

Connor, 490 U.S. 386, 396 (1989) (citing <u>Tennessee v. Garner</u>, 471 U.S. 1, 8-9 (1985)).[3]

## IV. CONCLUSION

We REVERSE the district court's decision to deny Thouvenell qualified immunity, and REMAND this case to the district court for further proceedings consistent with our ruling.

Entered for the Court

David M. Ebel
Circuit Judge

---

[3] Because of our ruling against Malone on the substance of whether there was clearly established law, we need not rule on Thouvenell's alternative argument that this was Malone's burden and procedurally he failed to advance clearly established law to support his claim.