**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 26, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MATTHEW GADD, an individual,

    Plaintiff - Appellee,

v.

JONATHAN CAMPBELL, South Jordan
City Police Department Officer, an
individual,

    Defendant - Appellant,

and

SOUTH JORDAN CITY; EDWARD
MONTGOMERY, South Jordan City
Justice Court Prosecutor, an individual;
ERIN GADD, an individual,

    Defendants.

No. 16-4048
(D.C. No. 2:15-CV-00667-JNP-EJF)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ** and **EBEL**, Circuit Judges.[1]

_____

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] The Honorable Neil Gorsuch participated in the oral argument but not in the decision in this case. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. See 28 U.S.C. § 46(d); see also United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997) (noting that this court allows remaining panel judges to act as a quorum to resolve an appeal). In this case, the two remaining panel members are in agreement.

_____

In this interlocutory appeal, Defendant Jonathan Campbell, a South Jordan City, Utah, police officer, challenges the district court's decision to deny him qualified immunity from Plaintiff Matthew Gadd's 42 U.S.C. § 1983 claim. Having jurisdiction under 28 U.S.C. § 1291, see Mitchell v. Forsyth, 472 U.S. 511, 524-30 (1985), we REVERSE because Gadd has failed to show that Officer Campbell's alleged conduct violated Gadd's clearly established Fourth Amendment rights.

**BACKGROUND**

Officer Campbell asserted qualified immunity in a Fed. R. Civ. P. 12(b)(6) motion to dismiss. This court reviews de novo the district court's decision to deny that motion. See Mayfield v. Bethards, 826 F.3d 1252, 1255 (10th Cir. 2016). "To survive a motion to dismiss, a complaint must allege facts that, if true, state a claim to relief that is plausible on its face. A claim is facially plausible when the allegations give rise to a reasonable inference that the defendant is liable." Id. (citation, internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (applying Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-58, 570 (2007)).

**I. Gadd's allegations**

Accepting Gadd's well-pled factual allegations as true, "view[ing] them in the light most favorable to" him, Mayfield, 826 F.3d at 1255, and considering also the documents Gadd attached to his complaint, see Brokers' Choice of Am., Inc. v. NBC

2

Universal, Inc., 861 F.3d 1081, 1103 (10th Cir. 2017), the relevant facts are as follows:

### A. The TPO and Gadd's text messages

Before filing for divorce, Gadd's wife, Defendant Erin Gadd, obtained a temporary protective order ("TPO") against him from a Utah state court. On June 24, 2014, a South Jordan City police officer served the TPO on Gadd when he arrived home from work and then ordered Gadd "to leave the home immediately" (Aplt. App. 7 ¶ 34).

The TPO listed Erin Gadd as the "Petitioner" and the Gadds' three children as "Other Person(s) Protected by this Order." (Id. 5 ¶¶ 21-22; 40.) The TPO directed Gadd, among other things, not to "commit, try to commit or threaten to commit any form of violence against the Petitioner or any person listed on this order." (Id. 6 ¶ 24; 41.) The TPO further ordered Gadd not to "contact, phone, mail, e-mail, or communicate in any way with Petitioner directly or indirectly. TEXT ONLY regarding children and parent time." (Id. 6 ¶ 28; 41 (underlining emphasis added).) By its terms, the TPO was to remain in effect until a hearing set for July 10, 2014.

On June 30, 2014, "after having no contact with his children whatsoever for six days," Gadd sent a text message to two of his three children; the third child did not have a cell phone. (Id. 8 ¶ 39.) To his son, Gadd texted: "Hi [redacted], I've been thinking about you a lot. I sure love you and miss you. How are you buddy?" (Id. 8 ¶ 40; 52.) To his daughter, Gadd texted: "Hi bug! I miss you SO much! How

3

are you doing sweet girl?  I think about you all the time and can't wait to see you!  Love, daddy."  (Id. 8 ¶ 41; 54.)

**B. South Jordan City's prosecution of Gadd for violating the TPO**

"[W]ithin minutes" of Gadd sending these two text messages, "Defendant Erin Gadd called the South Jordan City Police Department to request that Plaintiff Matthew Gadd be charged with violating the TPO based solely on [his] sending of the two text messages to his children."  (Id. 8 ¶ 43.)  "Defendant Officer Campbell was dispatched to investigate."  (Id. 8-9 ¶ 44.)  Although Campbell left Gadd a voice mail asking to speak with Gadd about the text messages, Gadd did not return the officer's call.  But Gadd refrained from communicating with his children for the duration of the TPO, which was dismissed at the July 10 hearing.

On the same day that he had been dispatched to investigate the text messages, June 30, 2014, Officer Campbell "submitted 'screening paperwork' and his police report" to the municipal prosecutor, (id. 10 ¶ 50 (citations omitted)), who "filed an Information" against Gadd on July 15, 2014, charging him with two class B misdemeanors.  (Id. 11 ¶ 55.)  Those charges, for violating the TPO, were "based solely on . . . Gadd's sending of the two text messages to his children."  (Id. 10 ¶ 50.)  As a result of those charges, Gadd received a summons in the mail on July 19, 2014, ordering him to appear in South Jordan City municipal court for arraignment on August 4, 2014.

Gadd appeared for the August 4 arraignment, accompanied by his attorney.

4

> Just prior to the arraignment hearing, the bailiff of the South Jordan City Justice Court ordered Plaintiff Matthew Gadd into a room off to the side of the court room. While in this side room, the bailiff ordered Plaintiff Matthew Gadd to allow the bailiff to take fingerprints of each of Plaintiff Matthew Gadd's fingers. Plaintiff Matthew Gadd objected and expressly denied permission for the bailiff to take his fingerprints. The bailiff told Plaintiff Matthew Gadd that the taking of fingerprints was mandatory and proceeded to physically seize Plaintiff Matthew Gadd's hands and took fingerprints of all ten fingers.

(Id. 12 ¶ 63.) After the fingerprinting, Gadd was arraigned and a pretrial conference was scheduled.

After the arraignment, Gadd's attorney sent the prosecutor a copy of the TPO and pointed out that the terms of the TPO did not expressly prevent Gadd from communicating with his children; in fact, the TPO contemplated that he would have contact with them during scheduled "parent time" (id. 6 ¶¶ 29-30). The prosecutor then requested, and the municipal court agreed, to dismiss the charges against Gadd without prejudice for insufficient evidence.[2]

---

[2] Gadd alleged that Officer Campbell "submitted 'screening paperwork' and his police report" to the prosecutor. (Aplt. App. 10 ¶ 50.) For the first time on appeal, Defendant Campbell asserts that he also submitted the TPO to the prosecutor. Campbell then relies on that fact to argue on appeal that he cannot be liable for the initiation of charges against Gadd because the prosecutor independently reviewed the TPO before charging Gadd. Our review here, however, "is limited" to Plaintiff Gadd's amended "Complaint and any documents it incorporates." Mayfield, 826 F.3d at 1256. Gadd did not allege in his amended complaint that Officer Campbell sent the TPO to the prosecutor. Gadd attached Officer Campbell's police report to the amended complaint, and that report stated that Campbell "printed a copy of the protective order that will be attached to this case." (Aplt. App. 59.) But Gadd did not allege that Officer Campbell actually attached the TPO to his police report and sent it to the prosecutor. Instead, Gadd alleged that later, after the prosecutor charged Gadd, Gadd's attorney sent the prosecutor an email with the TPO attached, "[a]s promised" (id. 73). Viewing these factual allegations "in the light most favorable to" Gadd, Mayfield, 826 F.3d at 1255, the first time the prosecutor saw the

**II. This § 1983 litigation**

Gadd sued Officer Campbell, as well as the prosecutor and South Jordan City, under 42 U.S.C. § 1983. Gadd also sued his now former wife, Erin Gadd, asserting Utah common law tort claims against her for malicious prosecution and abuse of process.

Relevant here, the district court denied Officer Campbell's Fed. R. Civ. P.12(b)(6) motion to dismiss the § 1983 claim against him based on qualified immunity. Campbell challenges that decision in this interlocutory appeal. See Mitchell, 472 U.S. at 524-30; see also Mayfield, 826 F.3d at 1255 ("The denial of a Rule 12(b)(6) motion to dismiss on qualified-immunity grounds is an appealable final order if it turns on an issue of law.").

## DISCUSSION

"When a defendant raises a qualified immunity defense, the court must dismiss the action unless the plaintiff shows that (1) the defendant violated a statutory or constitutional right, and (2) the right was clearly established at the time of the violation." Mayfield, 826 F.3d at 1255. We can consider these two inquiries in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, the second inquiry is dispositive.

---

TPO was after Gadd's attorney sent him a copy. For our purposes here, then, we assume that Officer Campbell did not submit a copy of the TPO to the prosecutor prior to the prosecutor charging Gadd.

In order to put that second inquiry into context, however, we briefly address the constitutional Fourth Amendment claim that Gadd alleged against Officer Campbell. The Fourth Amendment addresses "the matter of pretrial deprivations of liberty." Albright v. Oliver, 510 U.S. 266, 274 (1994) (plurality); see also id. at 290 (Souter, J., concurring in judgment); accord Manuel v. City of Joliet, 137 S. Ct. 911, 914, 917 (2017) (citing Gerstein v. Pugh, 420 U.S. 103 (1975)); Margheim v. Buljko, 855 F.3d 1077, 1085 (10th Cir. 2017). This includes pretrial detentions that occur both before the initiation of legal process in a criminal prosecution and those deprivations that, like here, occur after the initiation of legal process.[3] See Manuel, 137 S. Ct. at 917. Here, Gadd alleged that Campbell violated the Fourth Amendment when he caused Gadd's unconstitutional seizure by submitting false information to the city prosecutor, which the prosecutor relied upon to file charges against Gadd; those charges, unsupported by probable cause, resulted in Gadd being detained and forcibly fingerprinted when he appeared at his arraignment.

Gadd's Fourth Amendment claim presents some difficult legal issues, including 1) whether he sufficiently alleged that he was seized, for Fourth

---

[3] Frequently this court, in addressing similar § 1983 claims, has considered, "as a starting point," the five elements of a common law tort for malicious prosecution. Becker v. Kroll, 494 F.3d 904, 913 (10th Cir. 2007) (internal quotation marks omitted). Those elements are whether "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." Margheim, 855 F.3d at 1085 (quoting Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008)). Ultimately, however, the dispositive question remains whether the plaintiff sufficiently alleged a Fourth Amendment violation. See, e.g., Wilkens, 528 F.3d at 797.

Amendment purposes, and 2) whether he sufficiently alleged that Officer Campbell recklessly or deliberately mispresented to the prosecutor that the TPO prevented Gadd from briefly texting his two children in a non-threatening manner. We do not need to grapple with these and other difficult issues presented here, however, because Officer Campbell's assertion of qualified immunity imposed on Gadd the burden to show that Officer Campbell's alleged conduct violated clearly established law. Unfortunately for Gadd, he has failed to present this court with any sufficiently relevant precedent clearly establishing that Officer Campbell's alleged conduct violated Gadd's Fourth Amendment rights.

The law is clearly established if there is a Supreme Court or Tenth Circuit decision, or the weight of authority from other courts, that has found the law to be as the plaintiff maintains. See Sause v. Bauer, 859 F.3d 1270, 1275 (10th Cir. 2017) (internal quotation marks omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). The Supreme Court has warned against defining "'clearly established law' . . . at a high level of generality." White v. Pauly, 137 S. Ct. 548, 552 (2017) (per curiam) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)). Instead, "the clearly established law must be 'particularized' to the facts of the case." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). While there need not be a case "'directly on point for a right to be clearly established,

8

existing precedent must have placed the statutory or constitutional question beyond debate." Id. (internal quotation marks omitted).

The Supreme Court, then, has taken a rigorous approach to requiring prior relevant or controlling precedent that involves factually analogous situations holding similar conduct to be unconstitutional before an officer's claim to qualified immunity can be denied. This "is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation that the officer confronts." Mullenix, 136 S. Ct. at 308 (alteration, internal quotation marks omitted).

Unfortunately for Gadd, he has not cited to us, nor have we found on our own, any sufficiently analogous prevailing precedent that clearly established that Officer Campbell's alleged conduct violated the Fourth Amendment. To be relevant, such precedent would have to address the critical facts alleged here, including 1) the fact that Officer Campbell misrepresented the legal significance of the language used in the TPO issued against Gadd, construing that language to prevent Gadd from communicating by text with his children; and 2) the fact that the TPO, which is before the court, but which was not shown to be given to the municipal prosecutor, appears by its terms not to restrain Gadd from so communicating with his children.

The prior Tenth Circuit cases that the parties have cited clearly indicate that an officer may be liable for deliberately creating false facts or misrepresenting evidence to the court, prosecutor, or other government official issuing process against the

9

§ 1983 plaintiff. For example, in the case most frequently cited by the parties and the district court, Pierce v. Gilchrist, this Court held that the plaintiff had sufficiently stated a § 1983 claim against a police forensic chemist by alleging that the chemist "fabricated inculpatory evidence and disregarded exculpatory evidence, which led prosecutors to indict and prosecute" the wrong man for rape and other crimes. 359 F.3d 1279, 1281-82 (10th Cir. 2004); see also id. at 1282-83, 1293-94. And in Wilkens v. DeReyes, 528 F.3d 790, 793, 795-99, 804 (10th Cir. 2008), this Court denied qualified immunity on a §1983 claim alleging officers fabricated evidence by coercing witnesses to give matching statements. Similarly, in Robinson v. Maruffi, 895 F.2d 649, 650-51 (10th Cir. 1990), this Court upheld a jury verdict for the plaintiff on a § 1983 claim alleging that officers used false testimony to prosecute him.

Unlike those cases, Officer Campbell's alleged misrepresentation to the prosecutor here did not involve falsifying facts or fabricating evidence; instead Gadd alleged that Officer Campbell misinterpreted the meaning of a legal document, the TPO, and conveyed that misinterpretation to the prosecutor, deliberately or recklessly. A further important point overhanging this scenario is that the prosecutor, an attorney trained to interpret legal documents and the person who ultimately filed the charges against Gadd, could have gotten a copy of the TPO and reviewed it himself before deciding whether charges against Gadd were warranted, had he chosen to do so.

10

Gadd cites no clearly established law that is sufficiently analogous to the situation at issue here. The closest Tenth Circuit case we could find is Stonecipher v. Valles, 759 F.3d 1134 (10th Cir. 2014).[4] This court issued its decision in Stonecipher during the time the events at issue here were occurring, but after Officer Campbell submitted his screening paperwork and police report to the municipal prosecutor, so it is doubtful Stonecipher can provide clearly established law for our purposes. In any event, because Stonecipher is only generally relevant to the situation presented in our case, it would not provide us with clearly established law here. Moreover, Stonecipher declined to hold an objectively reasonable officer "to know the precise ins-and-outs of [relevant federal] regulatory provisions and discrete aspects of every state's criminal procedure" regarding when an accused can lawfully possess a firearm. Id. at 1143-44; see also id. at 1146-47. So Stonecipher did not clearly establish conduct that in the future would be deemed a constitutional violation. And, different from the situation presented here, we further noted in Stonecipher that the officer there had acted reasonably by obtaining the prosecutor's legal opinion before seeking a search warrant and arresting Stonecipher for unlawfully possessing firearms. Id. at 1144. Stonecipher, then, even if it could provide clearly established law for our case, does not establish that Officer Campbell's alleged conduct violated Gadd's Fourth Amendment rights.

---

[4] Gadd did cite Stonecipher below but not for the proposition that the law was clearly established that Officer Campbell's conduct was unconstitutional.

In sum, because Gadd has not cited, nor have we found, any sufficiently analogous case that clearly establishes that Officer Campbell's alleged conduct violated the Fourth Amendment, he is entitled to qualified immunity from Gadd's § 1983 claim against him.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision to deny Officer Campbell qualified immunity and REMAND for further proceedings consistent with this decision.

Entered for the Court


David M. Ebel
Circuit Judge