Justice KAGAN delivered the opinion of the Court.
Petitioner Elijah Manuel was held in jail for some seven weeks after a judge relied on allegedly fabricated evidence to find probable cause that he had committed a crime. The primary question in this case is whether Manuel may bring a claim based on the Fourth Amendment to contest the legality of his pretrial confinement. Our answer follows from settled precedent. The Fourth Amendment, this Court has recognized, establishes "the standards and procedures" governing pretrial detention. See, e.g., Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). And those constitutional protections apply even after the start of "legal process" in a criminal case-here, that is, after the judge's determination of probable cause. See Albright v. Oliver, 510 U.S. 266, 274, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (plurality opinion); id., at 290, 114 S.Ct. 807 (Souter, J., concurring in judgment). Accordingly, we hold today that Manuel may challenge his pretrial detention on the ground that it violated the Fourth Amendment (while we *915 leave all other issues, including one about that claim's timeliness, to the court below).
I
Shortly after midnight on March 18, 2011, Manuel was riding through Joliet, Illinois, in the passenger seat of a Dodge Charger, with his brother at the wheel. A pair of Joliet police officers pulled the car over when the driver failed to signal a turn. See App. 90. According to the complaint in this case, one of the officers dragged Manuel from the car, called him a racial slur, and kicked and punched him as he lay on the ground. See id., at 31-32, 63.[1] The policeman then searched Manuel and found a vitamin bottle containing pills. See id., at 64. Suspecting that the pills were actually illegal drugs, the officers conducted a field test of the bottle's contents. The test came back negative for any controlled substance, leaving the officers with no evidence that Manuel had committed a crime. See id., at 69. Still, the officers arrested Manuel and took him to the Joliet police station. See id., at 70.
There, an evidence technician tested the pills once again, and got the same (negative) result. See ibid. But the technician lied in his report, claiming that one of the pills was "found to be ... positive for the probable presence of ecstasy." Id., at 92. Similarly, one of the arresting officers wrote in his report that "[f]rom [his] training and experience, [he] knew the pills to be ecstasy." Id., at 91. On the basis of those statements, another officer swore out a criminal complaint against Manuel, charging him with unlawful possession of a controlled substance. See id., at 52-53.
Manuel was brought before a county court judge later that day for a determination of whether there was probable cause for the charge, as necessary for further detention. See Gerstein, 420 U.S., at 114, 95 S.Ct. 854 (requiring a judicial finding of probable cause following a warrantless arrest to impose any significant pretrial restraint on liberty); Ill. Comp. Stat., ch. 725, § 5/109-1 (West 2010) (implementing that constitutional rule). The judge relied exclusively on the criminal complaint-which in turn relied exclusively on the police department's fabrications-to support a finding of probable cause. Based on that determination, he sent Manuel to the county jail to await trial. In the somewhat obscure legal lingo of this case, Manuel's subsequent detention was thus pursuant to "legal process"-because it followed from, and was authorized by, the judge's probable-cause determination.[2]
While Manuel sat in jail, the Illinois police laboratory reexamined the seized pills, and on April 1, it issued a report concluding (just as the prior two tests had) that they contained no controlled substances. See App. 51. But for unknown reasons, the prosecution-and, critically for this case, Manuel's detention-continued for more than another month. Only on May 4 did an Assistant State's Attorney seek dismissal of the drug charge. See id., at 48, 101. The County Court immediately granted the request, and Manuel was *916 released the next day. In all, he had spent 48 days in pretrial detention.
On April 22, 2013, Manuel brought this lawsuit under 42 U.S.C. § 1983 against the City of Joliet and several of its police officers (collectively, the City). Section 1983 creates a "species of tort liability," Imbler v. Pachtman, 424 U.S. 409, 417, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), for "the deprivation of any rights, privileges, or immunities secured by the Constitution," § 1983. Manuel's complaint alleged that the City violated his Fourth Amendment rights in two ways-first by arresting him at the roadside without any reason, and next by "detaining him in police custody" for almost seven weeks based entirely on made-up evidence. See App. 79-80.[3]
The District Court dismissed Manuel's suit. See 2014 WL 551626 (N.D.Ill., Feb. 12, 2014). The court first held that the applicable two-year statute of limitations barred Manuel's claim for unlawful arrest, because more than two years had elapsed between the date of his arrest (March 18, 2011) and the filing of his complaint (April 22, 2013). But the court relied on another basis in rejecting Manuel's challenge to his subsequent detention (which stretched from March 18 to May 5, 2011). Binding Circuit precedent, the District Court explained, made clear that pretrial detention following the start of legal process could not give rise to a Fourth Amendment claim. See id., at *1 (citing, e.g., Newsome v. McCabe, 256 F.3d 747, 750 (C.A.7 2001) ). According to that line of decisions, a § 1983 plaintiff challenging such detention must allege a breach of the Due Process Clause-and must show, to recover on that theory, that state law fails to provide an adequate remedy. See 2014 WL 551626, at *1-*2. Because Manuel's complaint rested solely on the Fourth Amendment-and because, in any event, Illinois's remedies were robust enough to preclude the due process avenue-the District Court found that Manuel had no way to proceed. See ibid .
The Court of Appeals for the Seventh Circuit affirmed the dismissal of Manuel's claim for unlawful detention (the only part of the District Court's decision Manuel appealed). See 590 Fed.Appx. 641 (2015). Invoking its prior caselaw, the Court of Appeals reiterated that such claims could not be brought under the Fourth Amendment. Once a person is detained pursuant to legal process, the court stated, "the Fourth Amendment falls out of the picture and the detainee's claim that the detention is improper becomes [one of] due process." Id., at 643-644 (quoting Llovet v. Chicago, 761 F.3d 759, 763 (C.A.7 2014) ). And again: "When, after the arrest[,] a person is not let go when he should be, the Fourth Amendment gives way to the due process clause as a basis for challenging his detention." 590 Fed.Appx., at 643 (quoting Llovet, 761 F.3d, at 764 ). So the Seventh Circuit held that Manuel's complaint, in alleging only a Fourth Amendment violation, rested on the wrong part of the Constitution: A person detained following the onset of legal process could at most (although, the court agreed, not in Illinois) challenge his pretrial confinement via the Due Process Clause. See 590 Fed.Appx., at 643-644.
*917 The Seventh Circuit recognized that its position makes it an outlier among the Courts of Appeals, with ten others taking the opposite view. See id., at 643 ; Hernandez-Cuevas v. Taylor, 723 F.3d 91, 99 (C.A.1 2013) ("[T]here is now broad consensus among the circuits that the Fourth Amendment right to be free from seizure but upon probable cause extends through the pretrial period").[4] Still, the court decided, Manuel had failed to offer a sufficient reason for overturning settled Circuit precedent; his argument, albeit "strong," was "better left for the Supreme Court." 590 Fed.Appx., at 643.
On cue, we granted certiorari. 577 U.S. ----, 136 S.Ct. 890, 193 L.Ed.2d 783 (2016).
II
The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." Manuel's complaint seeks just that protection. Government officials, it recounts, detained-which is to say, "seiz[ed]"-Manuel for 48 days following his arrest. See App. 79-80; Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) ("A person is seized" whenever officials "restrain[ ] his freedom of movement" such that he is "not free to leave"). And that detention was "unreasonable," the complaint continues, because it was based solely on false evidence, rather than supported by probable cause. See App. 79-80; Bailey v. United States, 568 U.S. 186, 192, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013) ( "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime"). By their respective terms, then, Manuel's claim fits the Fourth Amendment, and the Fourth Amendment fits Manuel's claim, as hand in glove.
This Court decided some four decades ago that a claim challenging pretrial detention fell within the scope of the Fourth Amendment. In Gerstein, two persons arrested without a warrant brought a § 1983 suit complaining that they had been held in custody for "a substantial period solely on the decision of a prosecutor." 420 U.S., at 106, 95 S.Ct. 854. The Court looked to the Fourth Amendment to analyze-and uphold-their claim that such a pretrial restraint on liberty is unlawful unless a judge (or grand jury) first makes a reliable finding of probable cause. See id., at 114, 117, n. 19, 95 S.Ct. 854. The Fourth Amendment, we began, establishes the minimum constitutional "standards and procedures" not just for arrest but also for ensuing "detention." Id., at 111, 95 S.Ct. 854. In choosing that Amendment "as the rationale for decision," the Court responded to a concurring Justice's view that the Due Process Clause offered the better framework: The Fourth Amendment, the majority countered, was "tailored explicitly for the criminal justice system, and it[ ] always has been thought to define" the appropriate process "for seizures of person[s] ... in criminal cases, including the detention of suspects pending trial." Id., at 125, n. 27, 95 S.Ct. 854. That Amendment, standing alone, guaranteed "a fair and reliable determination of probable cause as a condition for any significant *918 pretrial restraint." Id., at 125, 95 S.Ct. 854. Accordingly, those detained prior to trial without such a finding could appeal to "the Fourth Amendment's protection against unfounded invasions of liberty." Id., at 112, 95 S.Ct. 854 ; see id., at 114, 95 S.Ct. 854.[5]
And so too, a later decision indicates, those objecting to a pretrial deprivation of liberty may invoke the Fourth Amendment when (as here) that deprivation occurs after legal process commences. The § 1983 plaintiff in Albright complained of various pretrial restraints imposed after a court found probable cause to issue an arrest warrant, and then bind him over for trial, based on a policeman's unfounded charges. See 510 U.S., at 268-269, 114 S.Ct. 807 (plurality opinion). For uncertain reasons, Albright ignored the Fourth Amendment in drafting his complaint; instead, he alleged that the defendant officer had infringed his substantive due process rights. This Court rejected that claim, with five Justices in two opinions remitting Albright to the Fourth Amendment. See id., at 271, 114 S.Ct. 807 (plurality opinion) ("We hold that it is the Fourth Amendment ... under which [his] claim must be judged"); id., at 290, 114 S.Ct. 807 (Souter, J., concurring in judgment) ("[I]njuries like those [he] alleges are cognizable in § 1983 claims founded upon ... the Fourth Amendment"). "The Framers," the plurality wrote, "considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it." Id., at 274, 114 S.Ct. 807. That the deprivations at issue were pursuant to legal process made no difference, given that they were (allegedly) unsupported by probable cause; indeed, neither of the two opinions so much as mentioned that procedural circumstance. Relying on Gerstein, the plurality stated that the Fourth Amendment remained the "relevan[t]" constitutional provision to assess the "deprivations of liberty"-most notably, pretrial detention-"that go hand in hand with criminal prosecutions." 510 U.S., at 274, 114 S.Ct. 807 ; see id., at 290, 114 S.Ct. 807 (Souter, J., concurring in judgment) ("[R]ules of recovery for such harms have naturally coalesced under the Fourth Amendment").
As reflected in Albright 's tracking of Gerstein 's analysis, pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case. The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. See supra, at 917. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong-when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process *919 has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement. And for that reason, it cannot extinguish the detainee's Fourth Amendment claim-or somehow, as the Seventh Circuit has held, convert that claim into one founded on the Due Process Clause. See 590 Fed.Appx., at 643-644. If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.[6]
For that reason, and contrary to the Seventh Circuit's view, Manuel stated a Fourth Amendment claim when he sought relief not merely for his (pre-legal-process) arrest, but also for his (post-legal-process) pretrial detention.[7] Consider again the facts alleged in this case. Police officers initially arrested Manuel without probable cause, based solely on his possession of pills that had field tested negative for an illegal substance. So (putting timeliness issues aside) Manuel could bring a claim for wrongful arrest under the Fourth Amendment. And the same is true (again, disregarding timeliness) as to a claim for wrongful detention-because Manuel's subsequent weeks in custody were also unsupported by probable cause, and so also constitutionally unreasonable. No evidence of Manuel's criminality had come to light in between the roadside arrest and the County Court proceeding initiating legal process; to the contrary, yet another test of Manuel's pills had come back negative in that period. All that the judge had before him were police fabrications about the pills' content. The judge's order holding Manuel for trial therefore lacked any proper basis. And that means Manuel's ensuing pretrial detention, no less than his original arrest, violated his Fourth Amendment rights. Or put just a bit differently: Legal process did not expunge Manuel's Fourth Amendment claim because the process he received failed to establish what that Amendment makes essential for pretrial *920 detention-probable cause to believe he committed a crime.[8]
III
Our holding-that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process-does not exhaust the disputed legal issues in this case. It addresses only the threshold inquiry in a § 1983 suit, which requires courts to "identify the specific constitutional right" at issue. Albright, 510 U.S., at 271, 114 S.Ct. 807. After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation. See, e.g., Carey v. Piphus, 435 U.S. 247, 257-258, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Here, the parties particularly disagree over the accrual date of Manuel's Fourth Amendment claim-that is, the date on which the applicable two-year statute of limitations began to run. The timeliness of Manuel's suit hinges on the choice between their proposed dates. But with the following brief comments, we remand that issue to the court below.
In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual, courts are to look first to the common law of torts. See ibid. (explaining that tort principles "provide the appropriate starting point" in specifying the conditions for recovery under § 1983 ); Wallace v. Kato, 549 U.S. 384, 388-390, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (same for accrual dates in particular). Sometimes, that review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. See id., at 388-390, 127 S.Ct. 1091 ;
*921 Heck v. Humphrey, 512 U.S. 477, 483-487, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). But not always. Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving "more as a source of inspired examples than of prefabricated components." Hartman v. Moore, 547 U.S. 250, 258, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) ; see Rehberg v. Paulk, 566 U.S. 356, 366, 132 S.Ct. 1497, 182 L.Ed.2d 593 (2012) (noting that " § 1983 is [not] simply a federalized amalgamation of pre-existing common-law claims"). In applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue.
With these precepts as backdrop, Manuel and the City offer competing views about what accrual rule should govern a § 1983 suit challenging post-legal-process pretrial detention. According to Manuel, that Fourth Amendment claim accrues only upon the dismissal of criminal charges-here, on May 4, 2011, less than two years before he brought his suit. See Reply Brief 2; Brief for United States as Amicus Curiae 24-25, n. 16 (taking the same position). Relying on this Court's caselaw, Manuel analogizes his claim to the common-law tort of malicious prosecution. See Reply Brief 9; Wallace, 549 U.S., at 389-390, 127 S.Ct. 1091. An element of that tort is the "termination of the ... proceeding in favor of the accused"; and accordingly, the statute of limitations does not start to run until that termination takes place. Heck, 512 U.S., at 484, 489, 114 S.Ct. 2364. Manuel argues that following the same rule in suits like his will avoid "conflicting resolutions" in § 1983 litigation and criminal proceedings by "preclud[ing] the possibility of the claimant succeeding in the tort action after having been convicted in the underlying criminal prosecution." Id., at 484, 486, 114 S.Ct. 2364 ; see Reply Brief 10-11; Brief for United States as Amicus Curiae 24-25, n. 16. In support of Manuel's position, all but two of the ten Courts of Appeals that have recognized a Fourth Amendment claim like his have incorporated a "favorable termination" element and so pegged the statute of limitations to the dismissal of the criminal case. See n. 4, supra .[9] That means in the great majority of Circuits, Manuel's claim would be timely.
The City, however, contends that any such Fourth Amendment claim accrues (and the limitations period starts to run) on the date of the initiation of legal process-here, on March 18, 2011, more than two years before Manuel filed suit. See Brief for Respondents 33. According to the City, the most analogous tort to Manuel's constitutional claim is not malicious prosecution but false arrest, which accrues when legal process commences. See Tr. of Oral Arg. 47; Wallace, 549 U.S., at 389, 127 S.Ct. 1091 (noting accrual rule for false arrest suits). And even if malicious prosecution were the better comparison, the City continues, a court should decline to adopt that tort's favorable-termination element and associated accrual rule in adjudicating a § 1983 claim involving pretrial detention. That element, the City argues, "make[s] little sense" in this context because "the Fourth Amendment is concerned not with the outcome of a prosecution, but with the legality of searches and seizures." Brief for Respondents 16. And finally, the City contends that Manuel forfeited an alternative theory for treating his date of release as the date of accrual: to wit, that his pretrial detention "constitute[d] a continuing Fourth Amendment violation," each day of which triggered the statute of limitations anew.
*922 Id., at 29, and n. 6; see Tr. of Oral Arg. 36; see also Albright, 510 U.S., at 280, 114 S.Ct. 807 (GINSBURG, J., concurring) (propounding a similar view). So Manuel, the City concludes, lost the opportunity to recover for his pretrial detention by waiting too long to file suit.
We leave consideration of this dispute to the Court of Appeals. "[W]e are a court of review, not of first view." Cutter v. Wilkinson, 544 U.S. 709, 718, n. 7, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005). Because the Seventh Circuit wrongly held that Manuel lacked any Fourth Amendment claim once legal process began, the court never addressed the elements of, or rules applicable to, such a claim. And in particular, the court never confronted the accrual issue that the parties contest here.[10] On remand, the Court of Appeals should decide that question, unless it finds that the City has previously waived its timeliness argument. See Reply to Brief in Opposition 1-2 (addressing the possibility of waiver); Tr. of Oral Arg. 40-44 (same). And so too, the court may consider any other still-live issues relating to the contours of Manuel's Fourth Amendment claim for unlawful pretrial detention.
For the reasons stated, we reverse the judgment of the Seventh Circuit and remand the case for further proceedings consistent with this opinion.
It is so ordered.

Because we here review an order dismissing Manuel's suit, we accept as true all the factual allegations in his complaint. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993).

Although not addressed in Manuel's complaint, the police department's alleged fabrications did not stop at this initial hearing on probable cause. About two weeks later, on March 30, a grand jury indicted Manuel based on similar false evidence: testimony from one of the arresting officers that "[t]he pills field tested positive" for ecstasy. App. 96 (grand jury minutes).

Manuel's allegation of unlawful detention concerns only the period after the onset of legal process-here meaning, again, after the County Court found probable cause that he had committed a crime. See supra, at 915 - 916. The police also held Manuel in custody for several hours between his warrantless arrest and his first appearance in court. But throughout this litigation, Manuel has treated that short period as part and parcel of the initial unlawful arrest. See, e.g., Reply Brief 1.

See also Singer v. Fulton County Sheriff, 63 F.3d 110, 114-118 (C.A.2 1995) ; McKenna v. Philadelphia, 582 F.3d 447, 461 (C.A.3 2009) ; Lambert v. Williams, 223 F.3d 257, 260-262 (C.A.4 2000) ; Castellano v. Fragozo, 352 F.3d 939, 953-954, 959-960 (C.A.5 2003) (en banc); Sykes v. Anderson, 625 F.3d 294, 308-309 (C.A.6 2010) ; Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126-1127 (C.A.9 2002) ; Wilkins v. De -Reyes, 528 F.3d 790, 797-799 (C.A.10 2008) ; Whiting v. Traylor, 85 F.3d 581, 584-586 (C.A.11 1996) ; Pitt v. District of Columbia, 491 F.3d 494, 510-511 (C.A.D.C.2007).

The Court repeated the same idea in a follow-on decision to Gerstein. In County of Riverside v. McLaughlin, 500 U.S. 44, 47, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991), we considered how quickly a jurisdiction must provide the probable-cause determination that Gerstein demanded "as a prerequisite to an extended pretrial detention." In holding that the decision should occur within 48 hours of an arrest, the majority understood its "task [as] articulat[ing] more clearly the boundaries of what is permissible under the Fourth Amendment." 500 U.S., at 56, 111 S.Ct. 1661. In arguing for still greater speed, the principal dissent invoked the original meaning of "the Fourth Amendment's prohibition of 'unreasonable seizures,' insofar as it applies to seizure of the person." Id., at 60, 111 S.Ct. 1661 (Scalia, J., dissenting). The difference between the two opinions was significant, but the commonality still more so: All Justices agreed that the Fourth Amendment provides the appropriate lens through which to view a claim involving pretrial detention.

The opposite view would suggest an untenable result: that a person arrested pursuant to a warrant could not bring a Fourth Amendment claim challenging the reasonableness of even his arrest, let alone any subsequent detention. An arrest warrant, after all, is a way of initiating legal process, in which a magistrate finds probable cause that a person committed a crime. See Wallace v. Kato, 549 U.S. 384, 389, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007) (explaining that the seizure of a person was "without legal process" because police officers "did not have a warrant for his arrest"); W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts § 119, pp. 871, 886 (5th ed. 1984) (similar). If legal process is the cut-off point for the Fourth Amendment, then someone arrested (as well as later held) under a warrant procured through false testimony would have to look to the Due Process Clause for relief. But that runs counter to our caselaw. See, e.g., Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 568-569, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) (holding that an arrest violated the Fourth Amendment because a magistrate's warrant was not backed by probable cause). And if the Seventh Circuit would reply that arrest warrants are somehow different-that there is legal process and then again there is legal process -the next (and in our view unanswerable) question would be why.

Even the City no longer appears to contest that conclusion. On multiple occasions during oral argument in this Court, the City agreed that "a Fourth Amendment right ... survive[d] the initiation of process" at the hearing in which the county judge found probable cause and ordered detention. Tr. of Oral Arg. 31; see id., at 33 (concurring with the statement that "once [an] individual is brought ... before a magistrate, and the magistrate using the same bad evidence says, stay here in jail ... until we get to trial, that that period is a violation of the Fourth Amendment"); id., at 51 (stating that a detainee has "a Fourth Amendment claim" if "misstatements at [such a probable-cause hearing] led to ongoing pretrial seizure").

The dissent goes some way toward claiming that a different kind of pretrial legal process-a grand jury indictment or preliminary examination-does expunge such a Fourth Amendment claim. See post, at 927, n. 4 (opinion of ALITO, J.) (raising but "not decid[ing] that question"); post, at 927 - 928 (suggesting an answer nonetheless). The effect of that view would be to cut off Manuel's claim on the date of his grand jury indictment (March 30)-even though that indictment (like the County Court's probable-cause proceeding) was entirely based on false testimony and even though Manuel remained in detention for 36 days longer. See n. 2, supra. Or said otherwise-even though the legal process he received failed to establish the probable cause necessary for his continued confinement. We can see no principled reason to draw that line. Nothing in the nature of the legal proceeding establishing probable cause makes a difference for purposes of the Fourth Amendment: Whatever its precise form, if the proceeding is tainted-as here, by fabricated evidence-and the result is that probable cause is lacking, then the ensuing pretrial detention violates the confined person's Fourth Amendment rights, for all the reasons we have stated. By contrast (and contrary to the dissent's suggestion, see post, at 927, n. 3), once a trial has occurred, the Fourth Amendment drops out: A person challenging the sufficiency of the evidence to support both a conviction and any ensuing incarceration does so under the Due Process Clause of the Fourteenth Amendment. See Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (invalidating a conviction under the Due Process Clause when "the record evidence could [not] reasonably support a finding of guilt beyond a reasonable doubt"); Thompson v. Louisville, 362 U.S. 199, 204, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960) (striking a conviction under the same provision when "the record [wa]s entirely lacking in evidence" of guilt-such that it could not even establish probable cause). Gerstein and Albright, as already suggested, both reflected and recognized that constitutional division of labor. See supra, at 917 - 918. In their words, the Framers "drafted the Fourth Amendment" to address "the matter of pretrial deprivations of liberty," Albright, 510 U.S., at 274, 114 S.Ct. 807 (emphasis added), and the Amendment thus provides "standards and procedures" for "the detention of suspects pending trial, " Gerstein, 420 U.S., at 125, n. 27, 95 S.Ct. 854 (emphasis added).

The two exceptions-the Ninth and D.C. Circuits-have not yet weighed in on whether a Fourth Amendment claim like Manuel's includes a "favorable termination" element.

The dissent would have us address these questions anyway, on the ground that "the conflict on the malicious prosecution question was the centerpiece of Manuel's argument in favor of certiorari." Post, at 923. But the decision below did not implicate a "conflict on the malicious prosecution question"-because the Seventh Circuit, in holding that detainees like Manuel could not bring a Fourth Amendment claim at all, never considered whether (and, if so, how) that claim should resemble the malicious prosecution tort. Nor did Manuel's petition for certiorari suggest otherwise. The principal part of his question presented-mirroring the one and only Circuit split involving the decision below-reads as follows: "[W]hether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process." Pet. for Cert. i. That is exactly the issue we have resolved. The rest of Manuel's question did indeed express a view as to what would follow from an affirmative answer ("so as to allow a malicious prosecution claim"). Ibid. (And as the dissent notes, the Seventh Circuit recounted that he made the same argument in that court. See post, at 923 -924, n. 1.) But as to that secondary issue, we think (for all the reasons just stated) that Manuel jumped the gun. See supra, at 920 - 922. And contra the dissent, his doing so provides no warrant for our doing so too.
* * *