In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-1449

MICHAEL BELEY, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-09714 —**John Robert Blakey**, *Judge*.

ARGUED JANUARY 17, 2018 — DECIDED AUGUST 23, 2018

Before FLAUM, EASTERBROOK, and BARRETT, *Circuit Judges*.

BARRETT, *Circuit Judge*. Michael Beley and Douglas Montgomery represent a class of sex offenders who allege that the City of Chicago refused to register them under the Illinois Sex Offender Registration Act (SORA) because they could not produce proof of address. If true, that might have violated SORA, because the Act provides a mechanism for registering the homeless. Yet Beley and Montgomery contend that it violated

their right to procedural due process—according to the plaintiffs, the City used constitutionally inadequate procedures to determine whether they had satisfied SORA's registration requirements.

But the Fourteenth Amendment guarantees due process only when the State deprives someone of life, liberty, or property. Beley and Montgomery insist that the City deprived them of liberty: they assert a right to register under SORA. For reasons we explain below, however, this is not a cognizable liberty interest. And without a cognizable liberty interest, the plaintiffs have no due process claim.

## I.

To comply with SORA, any sex offender residing in Chicago for three days or more must register at the headquarters of the Chicago Police Department.[1] 730 ILCS 150/3(a)(1). Registration requires more than just showing up. The offender must provide law enforcement with comprehensive biographical information, including identification and proof of address. *Id*. at 150/3(c)(5). If the offender has no fixed residence, he must report weekly to the Department, which documents all the locations where the person has stayed in the past seven days. *Id*. at 150/3(a).

An intake officer is not obliged to register all comers. Before registering any offender, the officer must determine whether the offender has complied with SORA's requirements—if he has, the officer registers him; if he hasn't, the of-

---

[1] The statute gives the superintendent of each city's police department the authority to designate the place of registration, and the Chicago Superintendent has chosen the headquarters of the Department.

ficer turns him away. The Department maintains a daily registration log, which documents each registration attempt. Failing to comply with SORA is a felony punishable by two to five years' imprisonment and may result in a "non-compliant" listing on the Illinois sex offender information website. *See id.* at 150/10(a), 5/5–4.5–40(a), & 152/115. An offender convicted of violating SORA must serve a minimum jail term of seven days and pay a minimum fine of $500 in addition to any other penalty imposed. *Id*. at 150/10(a).

Douglas Montgomery is a sex offender who tried unsuccessfully to comply with SORA. After he completed a twenty-year sentence for aggravated criminal sexual assault, he reported to the Department to register. He was turned away, however, because he produced neither an identification card nor proof of a fixed address. When Montgomery told the intake officer that he was homeless, the officer responded that the Department was "not registering homeless people right now." Nearly seven months later, after arresting Montgomery for violating several ordinances, Chicago police discovered that he had failed to register under SORA. They charged him with that violation, though he was ultimately acquitted.

Michael Beley, another homeless sex offender, had a similar experience. He tried to register after he was released from prison, but he was turned away because he lacked proof of address. Four days later, he tried again and was rejected for the same reason. On his third attempt, Beley tried to register with an identification card bearing his son's address. The intake officer refused to register him, however, because the address was in a location that was off-limits to child sex offenders. Shortly after this third attempt, the state listed Beley as

"non-compliant" on the Illinois State Police sex offender web-site. Beley then secured a spot at a homeless shelter, and he was able to register with an Illinois identification card listing the shelter as his address. But when the shelter stopped accepting child sex offenders, Beley found himself back on the street. He has since registered on a weekly basis as an offender without a fixed residence.

Beley and Montgomery filed a class action against the City on behalf of "[a]ll persons who attempted to register under the Illinois Sex Offender Registration Act with the City of Chicago [during a defined period] and who were not permitted to register because they were homeless." They asserted a claim under 42 U.S.C. § 1983, alleging that the City's policy of refusing to register the homeless violated the Due Process Clause of the Fourteenth Amendment.[2] The plaintiffs didn't describe what process the City should have provided; at oral argument before us, they suggested having a supervisor available to review an officer's determination that an offender failed to satisfy the requirements for registration.

The district court entered summary judgment for the City. It agreed with the plaintiffs that a homeless sex offender has a protected liberty interest in the ability to register under

---

[2] Their complaint described the right to register under SORA as a property right, but at some point during the district court proceedings, they shifted to describing it as a liberty interest. Before us, they treat it only as a liberty interest; thus, we address only that argument. Their complaint also asserted a state-law claim under SORA, but they abandoned that claim at summary judgment.

SORA.[3] *Beley v. City of Chicago*, 2015 WL 684519, at *2 (N.D. Ill. Feb. 17, 2015) ("[A] homeless sex offender's … interest in being able to register" is a "protected liberty interest" because it "jeopardizes their significant interest in freedom from liability and incarceration."). But a municipality is liable for the constitutional violations of its officers only if the officers act pursuant to a city policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The district court said that the plaintiffs had arguably shown "occasional lapses of judgment" or "individual misconduct by police officers" but not that the City had a policy or custom of turning the homeless away. *Beley v. City of Chicago*, 2017 WL 770964, *10 (N.D. Ill. Feb. 28, 2017). It thus held that the City was entitled to judgment.

We affirm the district court, though on a different ground. The City argues before us, as it did below, that the ability to register under SORA is not a cognizable liberty interest. We agree.

II.

The Fourteenth Amendment's guarantee of due process is triggered when the state deprives a person of "life, liberty, or property." U.S. CONST. amend. XIV, § 1. While their arguments are not particularly clear, the plaintiffs suggest several theories for why the City's intake officers deprived them of a cognizable liberty interest. All of them fail.

---

[3] Other district courts have also accepted this argument. *See, e.g.*, *Johnson v. City of Chicago*, 2016 WL 5720388, at *2 (N.D. Ill. Sept. 30, 2016); *Derfus v. City of Chicago*, 42 F. Supp. 3d 888, 899 (N.D. Ill. 2014); *Saiger v. City of Chicago*, 37 F. Supp. 3d 979, 984 (N.D. Ill. 2014); *Johnson v. City of Chicago*, 2013 WL 3811545, at *9 (N.D. Ill. July 22, 2013).

The first is the weakest: the plaintiffs argue that they have the right to register as sex offenders. But saying that one has the right to register under SORA is like saying that one has the right to serve a sentence or the right to pay taxes. SORA's registration requirement burdens sex offenders; it is not, as the plaintiffs contend, an aspect of their liberty.

The next argument is better, though also unsuccessful. The plaintiffs suggest that their undisputed liberty interest in freedom from bodily restraint triggered the Clause. To be clear, they do not complain that the City incarcerated them; nor do they seek to enjoin the City from incarcerating them in the future.[4] *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908) (permitting plaintiffs to sue for an injunction on the ground that enforcement of the statute would violate procedural due process). Their theory seems to be that the State must provide due process not only for actions that take a cognizable liberty interest, but also for actions that create the potential for a later loss of that interest. In other words, registration is protected because it is a liberty interest, once removed. If sex offenders don't register, the State might imprison them, and imprisonment would restrain their liberty. To protect their interest in freedom from bodily restraint, they reason, the Fourteenth Amendment must also require the State to provide procedural protection for any antecedent action that threatens that interest.

---

[4] This case does not present a question of ripeness. The plaintiffs are not suing to stop a future deprivation of liberty without due process; they are suing to remedy what they characterize as an already completed violation.

By its own terms, however, the Fourteenth Amendment guarantees procedural protection for state action that *deprives* someone of a cognizable interest in life, liberty, or property, not for state action that *jeopardizes* that interest. U.S. CONST. amend. XIV, § 1 ("[N]or shall any state deprive any person of life, liberty, or property, without due process of law."); *see also LaBella Winnetka v. Village of Winnetka*, 628 F.3d 937, 943–44 (7th Cir. 2010) ("To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must demonstrate that … he suffered a loss of that interest amounting to a deprivation."). The state action relevant here—the intake officers' refusal to register the plaintiffs—did not deprive the plaintiffs of their interest in freedom from bodily restraint, so the plaintiffs cannot successfully argue that the loss of that interest triggered the Clause. The plaintiffs must ground their procedural due process claim in an interest that the officers actually took.

That brings us to their next theory: that freedom from the possibility of incarceration is a cognizable liberty interest in its own right. The plaintiffs offer no support for this position. Certainly, the Fourteenth Amendment does not protect a person's freedom from fear of apprehension. *Paul v. Davis*, 424 U.S. 693, 695–97 (1976) (police did not deprive plaintiff of liberty by inaccurately identifying him as an "active shoplifter," even though the designation "would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended"). And the plaintiffs have not identified any other way in which the possibility of incarceration burdens them. It does not impose additional restrictions on where they can live, where they can work, or what they can do; nor does it saddle them with additional obligations like reporting requirements. In this respect, the

plaintiffs' situation stands in contrast to that of the plaintiffs in *Schepers v. Indiana Department of Correction*, which the plaintiffs repeatedly—and mistakenly—cite as an analogous case. 691 F.3d 909 (7th Cir. 2012). In *Schepers*, we held that plaintiffs lost liberty when they were erroneously identified as "sexually violent predators" on the state's online offender registry. *Id*. at 911–12. That listing imposed both restrictions and obligations on the plaintiffs—for example, those on the registry could not live within 1,000 feet of a school, and they had to report in person to local law enforcement at regular intervals. *Id.* at 912. In this case, however, plaintiffs were subject to similar restraints because they were sex offenders; SORA did not impose new restraints on them because they were "non-compliant" sex offenders.

The plaintiffs float one last possibility. Even if the risk of losing liberty does not trigger the Due Process Clause, both Montgomery and Beley actually lost liberty for failing to register. Montgomery was charged with violating SORA, and Beley alleges that he suffered reputational harm when the State listed him as "non-compliant" on its website. But Montgomery and Beley do not represent a class defined as "all homeless people denied registration under SORA who were subsequently arrested or listed as non-compliant on the State's website." They represent a class of "[a]ll persons … who were not permitted to register because they were homeless." They presumably defined the injury this way to make a class action possible—Beley and Montgomery appear to be the only members of the class who suffered consequences for failing to register. *See* Fed. R. Civ. P. 23(a)(3) (The court may certify a class only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class."). Having chosen

to define the deprivation as the denial of registration, however, the plaintiffs are stuck with that theory. The City owed Montgomery due process when it arrested him, and Beley could at least try to argue that the State deprived him of liberty by listing him as "non-compliant" on the sex-offender website.[5] But the City's intake officers had no obligation to provide process when they determined that the plaintiffs were ineligible to register.

***

Maybe the plaintiffs have a claim that the City's intake officers violated SORA by declining to register them. But they cannot assert a claim for a state-law violation under 18 U.S.C. § 1983. *Snowden v. Hughes*, 321 U.S. 1, 11 (1944) ("Mere violation of a state statute does not infringe the federal Constitution."). Because they have not alleged that the City deprived them of a cognizable liberty interest, the judgment of the district court is AFFIRMED.

---

[5] "Reputational harm" is not a cognizable liberty interest unless it is accompanied by an alteration in legal status or rights. *Paul*, 424 U.S. at 712. Beley has restrictions and obligations, including the obligation to register, because he is a sex offender. But he has not identified any additional restrictions or obligations that accompany his listing as "non-compliant" on the state-sponsored website. *Cf. Schepers*, 691 F.3d at 911–12 (plaintiffs erroneously labeled as "sexually violent predators" on the sex offender registry stated a due process claim because being listed on the registry imposed "a variety of obligations and restrictions" that would not have otherwise applied to them).