In the

# United States Court of Appeals

## For the Seventh Circuit

---

No. 15-2444

PAUL REGAINS,

*Plaintiff-Appellant,*

*v.*

CITY OF CHICAGO,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 9687 — **James B. Zagel**, *Judge.*

---

ARGUED APRIL 4, 2016 — DECIDED MARCH 13, 2019

---

Before EASTERBROOK and HAMILTON, *Circuit Judges,* and
PEPPER, *District Judge.*[*]

PEPPER, *District Judge.* The Illinois Sex Offender Registration Act (SORA) requires sex offenders to register with the police. Because he did not have a permanent address (he was homeless), Paul Regains followed the instructions of officers

---

[*] Of the Eastern District of Wisconsin, sitting by designation.

who directed him to a local homeless shelter (which they listed on his registration as his permanent address), and to return for re-registration in ninety days. When he appeared to report three months later, Chicago police officers arrested Regains on an "investigative alert," because other officers had not been able to locate Regains at the address provided. Regains remained in custody seventeen months before the Illinois trial court found him not guilty of failing to a report a change of address.

Regains sued the City of Chicago under 42 U.S.C. § 1983, claiming that it violated his rights under the Due Process Clause of the Fourteenth Amendment. The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6), finding that either the claim was time-barred under Illinois' two-year statute of limitations for personal injury claims, or that it was barred by this court's decision in *Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001), *abrogated by Manual v. City of Joliet,* 137 S. Ct. 911 (2017) ("*Manuel I*"). The district court also found that the amended complaint lacked sufficient factual details to give the City fair notice, and that because Regains did not specifically identify a particular constitutional violation, the City could not be held liable under *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 658, 692 (1978).

We reverse the district court's decision that Regains' claim was time-barred, and remand for further proceedings.

### I.  Background

In 2012, SORA required sex offenders to register in person within three days of establishing a residence or a temporary domicile in any county. 730 ILCS § 150/3(b) (2012). Sex offenders in the City of Chicago registered "at the Chicago Police

Department Headquarters." 730 ILCS § 150/3(a)(1). The law required sex offenders without a fixed address or temporary domicile to report weekly to the chief of police in the municipality in which that person was located. 730 ILCS § 150/3.

The plaintiff asserts that SORA required "persons with a fixed abode" to report every ninety days, citing 730 ILCS § 150/6. Appellant's Br. at 2. In fact, that section of the statute required a person who had been adjudicated to be sexually dangerous or was a sexually violent person to report every ninety days (and required such offenders to report weekly if they did not have a fixed residence). "Any other person" required to register under the statute was required to report once a year. The record does not indicate whether Regains, had he had a fixed residence, would have been subject to the ninety-day reporting interval or the one-year reporting interval. Either way, the law required homeless sex offenders to report more frequently than sex offenders with fixed residences. Failure to comply with the provisions of the statute constituted a felony, for which there was strict liability. 730 ILCS § 150/10(a); *People v. Molnar*, 857 N.E.2d 209, 224 (Ill. 2006).

By 2012, the Chicago police officers assigned to sex offender registration/reporting duty felt that the weekly reporting requirement for homeless sex offenders had become burdensome. Some of those police officers engaged in a widespread practice of steering homeless sex offenders to homeless shelters that would accept sex offenders, and directing the sex offenders to return with documentation showing the shelter as the sex offender's residence. This scheme had the effect of providing homeless sex offenders with a "residence," which meant that they were not subject to the weekly

reporting requirement. The officers who engaged in this steering practice, and their supervisors, were aware that the number of persons registered at the shelters far exceeded the shelter's capacity. In other words, they knew that the homeless sex offenders who listed the shelter as their "address" likely would not be able to remain there.

Other Chicago police officers assigned to registration duties disagreed with the steering practice. These other officers visited homeless shelters that accepted sex offender registrants and attempted to locate the registrant; if they could not locate the registrant at the shelter, the officers would prepare an investigative alert, informing any Chicago police officer who encountered the registrant that there was probable cause for arrest.

Regains alleges that in April 2012, Chicago police officers employed the steering practice when he attempted to register as a homeless sex offender. He asserts that they directed him to a shelter, registered him as residing at that shelter, and instructed him to return for quarterly reporting and re-registration in July 2012.

In early May 2012, two Chicago police officers went to the shelter to look for Regains. They did not find him, and they prepared a report for failure to register at that address. The next day, a Chicago police detective reviewed the report, visited the shelter without finding Regains, and issued an investigative alert informing other Chicago police officers that there was probable cause to arrest Regains.

On July 18, 2012, Regains reported as directed; Chicago police officers arrested him under the investigative alert. The prosecutor charged Regains with two violations of 730 ILCS

§ 150/6—failure to register within three days after changing his address, and failure to report every ninety days. On September 4, 2012, Cook County Judge Thomas V. Gainer arraigned Regains and ordered him detained. Regains remained in custody until his December 3, 2012 trial—some seventeen months—at which time the judge found him not guilty.[1]

Regains filed his original § 1983 complaint in federal court on December 3, 2014.

## II. Discussion

We review *de novo* a district court's grant of a Rule 12(b)(6) motion to dismiss. *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 382 (7th Cir. 2016) (citation omitted). "In construing the complaint, we accept all well-pleaded facts as true and draw reasonable inferences in the plaintiffs' favor." *Id.* We may affirm on any ground that the record supports, as long as the district court adequately addressed that ground and the non-moving party had the opportunity to contest it. *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012) (citation omitted).

Regains argues that he was deprived of his liberty for seventeen months without due process of law, as a result of "the widespread practice within the Chicago police department towards homeless sex offenders." Appellant's Br. at 6. He asserts that the City violated his Fourteenth Amendment due

---

[1] The transcript of Regains' trial indicates that he registered on April 17, 2012. App. to Appellee's Br. at A27. He appeared at the police station on July 18, 2012, *id.* at A30, ninety-two days after the date he last registered, *id.* at A37. The trial judge stated that he could not tell from looking at the report date Regains had been given whether he was to report on July 16 or July 18, 2012, and made a finding that Regains was not guilty. *Id.* at A37.

process rights by engaging in conduct "in the nature of malicious prosecution." He has taken pains to avoid giving his personal injury claim a specific label. The district court found that if Regains' claim sounded in false arrest, it was time-barred, and that if it sounded in malicious prosecution, it was barred for other reasons.

Regains sued under a federal statute—42 U.S.C. § 1983—but we look to the law of the state in which the personal injury occurred to determine the length of the statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Serino v. Hensley*, 735 F.3d 588, 590 (7th Cir. 2013). Under Illinois law, a plaintiff must bring a personal injury action within two years after its accrual. *Wallace*, 549 U.S. at 387 (citing 735 ILCS § 5/13-202 (West 2003)).

The question of when the cause of action accrues "is a question of federal law that is *not* resolved by reference to state law." *Wallace*, 549 U.S. at 388 (emphasis in the original). Federal common law holds that a cause of action accrues when "the plaintiff has a 'complete and present cause of action'"—in other words, when "the plaintiff can file suit and obtain relief." *Id.* (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). Put another way, a personal injury claim raised under § 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Serino*, 735 F.3d at 591. Because there is "no single accrual rule for all § 1983 claims," we must "use the rule that applies to the common-law cause of action most similar to the kind of claim the plaintiff asserts." *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013).

At the time of briefing and oral argument, there was a debatable question as to whether Regains' claim was time-barred. His assertion that he should not have been arrested and charged sounded like a claim for false arrest, or false imprisonment. His assertion that he was detained for seventeen months while awaiting trial on a charge that was unfounded sounded like a malicious prosecution claim. The accrual rule for false arrest/false imprisonment claims is different from the accrual rule for malicious prosecution claims. A claim for false arrest or false imprisonment accrues once the plaintiff is detained (or released) as a result of a lawful process. *Wallace*, 549 U.S. at 390-391. A cause of action for malicious prosecution "does not accrue until the criminal proceedings have terminated in the plaintiff's favor." *Heck v. Humphrey*, 512 U.S. 477, 48 (1994).

When he appealed, that difference was critical for Regains. He was arraigned and detained by lawful process on September 4, 2012; under the false arrest/false imprisonment accrual rule, he would have had to file his § 1983 complaint by September 4, 2014. He did not file the complaint until December 3, 2014, three months later. In contrast, under the malicious prosecution accrual rule, Regains' claim would have accrued on December 3, 2012—the date he was acquitted. Regains filed his § 1983 complaint exactly two years after that date. If his claims properly fell into the false arrest/false imprisonment realm, his claim would have been time barred; if it fell into the malicious prosecution realm, it would have been timely.

After oral argument, this court resolved the timing question. In *Manuel v. City of Joliet*, 903 F.3d 667, 670 (7th Cir. 2018) ("*Manuel II*"), *petition for cert. filed*, (U.S. Feb. 22, 2019) (No. 18-1093), we held that a claim that a plaintiff was detained

without probable cause "accrues when the detention ends."[2] Regains concedes that the officers who arrested him had probable cause to believe that he violated SORA, but he has consistently argued that he seeks damages because he was "deprived of liberty without due process of law when he was held at the Cook County Jail until he was acquitted." Appellant's Br. at 13. Applying the principle of *Manuel II* to Regains' argument that his seventeen-month detention for a crime that he was misled into committing was unconstitutional, we conclude that his claim accrued when he was released on December 3, 2012, and that his claim was timely filed.

This conclusion does not necessarily mandate remand, however, because the district court stated other bases for dismissing the case. The court also found that Regains' amended complaint failed to identify specific conduct on the City's part that formed the basis for Regains' claim that it violated his rights under the Fourteenth Amendment. Regains named only the City as a defendant; he did not sue individual officers. The amended complaint was terse—six of its twenty paragraphs described how and why officers steered homeless sex offenders to shelters. The complaint then alleged that when Regains tried to register, officers steered him to a shelter, registered him at that shelter and required him to come back for

---

[2] The Supreme Court has accepted *certiorari* in *McDonough v. Smith*, 2019 WL 166879 (No. 18-485). The petition presents the following question: "Whether the statute of limitations for a Section 1983 claim based on fabrication of evidence in criminal proceedings begins to run when those proceedings terminate in the defendant's favor (as the majority of circuits has held) or whether it begins to run when the defendant becomes aware of the tainted evidence and its improper use (as the Second Circuit held below)." Petition for Writ of Certiorari, *McDounough* 2018 WL 5026294 (No. 18-845). The Court will hear argument on April 17, 2019.

re-registration in three months. It alleged the facts surrounding Regains' arrest and charging, and alleged that he stayed in custody until his trial and acquittal. The penultimate paragraph stated, "As a result of the foregoing, plaintiff was deprived of rights secured by the Fourteenth Amendments to the Constitution of the United States and incurred damages."

The amended complaint does not link specific conduct to Regains' assertion that his due process rights were violated. Other than identifying the City as an Illinois municipal corporation, it does not describe any conduct by the City. It describes the actions of the *officers* who steered Regains to the shelter, the actions of the *officers* who issued the investigative alert and the actions of the *officers* who arrested him, but does not say which—if any—of these actions constitute conduct by the City that violated his due process rights. It says he "was charged" with a felony, and "remained" in custody until his acquittal, but does not attribute to the City or anyone else responsibility for the charges or his detention. It does not allege that police department officials with policy-making authority knew about these practices and allowed them to continue.

A plaintiff may remedy a deficient complaint by amending it, but the district court also questioned whether Regains could state a claim against the City at all. In brief comments at the end of its decision, the court noted that a municipality such as the City is subject to liability under § 1983 only if an official municipal policy caused the violation of the plaintiff's constitutional rights, citing *Monell*, 436 U.S. at 692. The court stated that in the absence of a constitutional violation, the City could not be held liable. Regains has not addressed the *Monell* question in his appellate briefs.

Because Regains has chosen to sue only the City, he must state a claim that the denial of his liberty for seventeen months was the result of the implementation or execution of "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers," or a "governmental 'custom' … ." *Monell*, 436 U.S. at 690. Allegations that the City is liable "on a *respondeat superior* theory" will not suffice. *Id.* at 691.

Before this court, Regains has alleged that there was a "widespread practice within the police department of the City of Chicago to manipulate the registration process to force homeless sex offenders into violations of the Monitoring Act." Appellant's Brief at 6. He asserts that "[t]his practice was 'so widespread and well-settled that it constitutes a custom or usage with the force of law even though it is not authorized by written law or express policy.'" Appellant's Reply Brief at 2, quoting *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015). Regains has presented no evidence to support these allegations; he never got the chance, because the district court dismissed the case at the pleading stage. Other plaintiffs have had the opportunity to present such evidence.

In *Beley v. City of Chicago*, a class composed of "[a]ll persons who attempted to register under the Illinois Sex Offender Registration Act with the City of Chicago from December 6, 2010 to the date of entry of judgment and who were not permitted to register because they were homeless" alleged that the City had violated, among other provisions, the due process clause. *Beley v. City of Chicago*, Case No. 12-cv-9714, 2017 WL 77096, at *1 (N.D. Ill., Feb. 28, 2017), *aff'd* 901 F.3d 823 (7th Cir. 2018). The district court granted summary judgment in favor of the City on the due process claim. The court stated

that its ruling turned on "one dispositive issue: whether Plaintiffs present sufficient evidence of a 'policy' or 'custom' on the part of Defendant to support municipal liability." *Id.* at *6. Viewing the evidence the plaintiffs had presented in the light most favorable to them, the court found that they "fail[ed] to raise a genuine issue of fact with respect to whether [Criminal Registration Section] personnel acted pursuant to an official policy or practice regarding the registration of homeless sex offenders." *Id.* at *8. The court found that, at best, the plaintiffs had proven that on ten occasions, individual officers may have engaged in unconstitutional behavior. *Id.* Although the plaintiffs appear to have presented a substantial amount of evidence in *Beley*, the court concluded that "the evidence does not present a triable issue of fact regarding whether there was a policy or widespread practice of denying SORA registration to sex offenders who lacked a fixed address at the time of registration." *Id.* at *10. "At most, Plaintiffs have shown 'occasional lapses of judgment' or 'individual misconduct by police officers,' not 'systemic problems' or 'institutional behavior.'" *Id.*, quoting *Rossi* 790 F.3d at 737. The plaintiffs appealed; we affirmed on other grounds. *Beley* 901 F.3d at 826 (affirming on the ground that the ability to register under SORA is not a cognizable liberty interest).

Another district court reached the same conclusion in a case involving individual plaintiffs. *See Derfus v. City of Chicago*, Case No. 13 C 7298, 2015 WL 1592558 (N.D. Ill., April 6, 2015). In granting summary judgment in favor of the City, the *Derfus* court concluded:

> The fact that the City registered more offenders as not having a fixed residence or temporary domicile in two random time periods in 2014

than in two random time periods in prior years does not suggest that the City had a policy of refusing to register offenders with that status. Nor does the fact that it refused over a three-year period to register six offenders as "homeless," a term that does not appear in SORA and that is commonly used to refer to a much broader segment of people than those deemed by SORA to be lacking a fixed residence or temporary domicile.

*Id.* at *4.

These cases raise doubts about whether Regains could amend his complaint to allege a widespread policy or practice, or marshal proof the proof at summary judgment that the *Beley* and *Derfus* plaintiffs could not. Even if he can allege that a practice existed and that it was widespread enough to constitute a custom, *Monell* requires more. Regains' arguments and the very fact of his arrest and detention show that not all officers followed the practice. He describes a schism between registering officers who followed the steering practice and those who did not. To state a *Monell* claim, Regains will need to show that high-ranking members of the Chicago Police Department knew of the differing practices and allowed them to continue. This may be a tall order, but we cannot conclude that allowing Regains to try would be an exercise in futility.

A final point: on appeal, Regains consistently has characterized his claim as a violation of his Fourteenth Amendment due process rights. At the time he filed the appeal, that was his only option; our decision in *Newsome*, 256 F.3d at 750, precluded the argument that pretrial detention that occurred after the start of the judicial process violated the Fourth

Amendment. *Manuel I* since has abrogated *Newsome*, holding that "the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process." 137 U.S. at 920. In the post-*Manuel I/Manuel II* world, "the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention, whether before or after the initiation of formal legal process." *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. Jan. 23, 2019).

## III.    Conclusion

Because Regains timely filed his complaint, we reverse the district court's dismissal of the complaint and remand for further proceedings consistent with this decision.