NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 20, 2019[*]
Decided June 20, 2019

**Before**

MICHAEL S. KANNE, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

No. 18-3720

| | |
|---|---|
| WILLIAM A. WHITE,<br>        *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Southern District of Illinois. |
| *v.* | No. 3:17-cv-01059-JPG-DGW |
| TODD SLOOP & WILLIAM TRUE,<br>        *Defendants-Appellees*. | J. Phil Gilbert,<br>*Judge.* |

## O R D E R

William White, an inmate at the federal prison in Marion, Illinois, sued two prison officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for confiscating some of his mail because it contained white supremacist ideology. The district court concluded that White could not pursue a First Amendment claim in a *Bivens* action and granted the defendants' motion to dismiss. Because White asserts no plausible claim for relief, we affirm the judgment.

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

We review de novo the district court's grant of the motion to dismiss, drawing reasonable inferences in White's favor, and may affirm on any ground supported by the record. *See Regains v. City of Chicago*, 918 F.3d 529, 533 (7th Cir. 2019).

White received through the prison mail two *White Voice* newsletters and a book entitled *Talmud Unmasked*. Todd Sloop, then-acting warden, screened the newsletters and noticed that one contained a photograph depicting violence and another featured an advertisement entitled "What is a Skinhead?" with several images of swastikas. Later, William True, the warden, reviewed the book and concluded that it "advocated violence and murder." (Indeed, a summary attached to White's complaint describes the book as "hateful literature" that "exposes" Judaism to be a "doctrine of hate.") The two officials rejected the publications, finding that they "pose[d] a threat to security, good order, or discipline of the institution." *See* 28 C.F.R. § 540.71(b). White challenged those decisions through the prison's internal grievance procedure, but to no avail.

White then brought this suit for declaratory and injunctive relief and damages, alleging that the prison's mail-screening policy is unconstitutional as a general matter and as applied to him. At screening, *see* 28 U.S.C. § 1915A, the district court eliminated many of White's claims, including a claim for injunctive and declaratory relief against the director of the Bureau of Prisons, in his official capacity, for "maintaining policies that resulted in publications being withheld." However, the court allowed White to proceed on his First Amendment claims under *Bivens* against Sloop and True.

The defendants moved to dismiss the complaint for failure to state a claim. A magistrate judge recommended that the district court grant the motion, and the district court adopted that recommendation. The court concluded that the Supreme Court's holding in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), in which courts were strongly cautioned against creating new *Bivens* claims, disfavored recognizing a First Amendment claim here.

On appeal, White argues that First Amendment violations are actionable under *Bivens* because this court has recognized similar claims in cases preceding *Abbasi*. *See, e.g., King v. Fed. Bureau of Prisons*, 415 F.3d 634, 638 (7th Cir. 2005). But, since *Abbasi*, the *Bivens* framework has narrowed substantially to limit lawsuits against federal agents; this court's "past pronouncements are thus not controlling." *See Vanderklok v. United States*, 868 F.3d 189, 199 (3d Cir. 2017) (declining to recognize First Amendment *Bivens* claim, even though the court presumed the claim existed pre-*Abbasi*).

Because the Supreme Court has not yet recognized a *Bivens* claim for First Amendment violations, *see Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012), it is unclear whether that claim is cognizable, *see Abbasi*, 137 S. Ct. at 1857–58. But we need not decide this issue here. Even if a *Bivens* action exists, White's complaint does not state a plausible claim for relief. The complaint contained numerous attachments, including some of the banned material. These are part of the complaint and appropriate to consider in deciding a motion to dismiss. *See* FED. R. CIV. P. 10(c); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). They demonstrate that White had no hope of proving that the prison improperly withheld his publications.

The First Amendment right to free speech also includes the right to read. *Miller v. Downey*, 915 F.3d 460, 463 (7th Cir. 2019). But a prisoner does not have unfettered access to reading materials; prisons have "great latitude" to restrict that right so long as the limitations reasonably relate to legitimate penological interests. *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009); *see Turner v. Safley*, 482 U.S. 78, 89 (1987). To assess whether a restriction is permissible, we consider: (1) whether the policy has a "valid, rational connection" to a legitimate penological interest; (2) whether alternative means to exercise the right are available to prisoners; (3) the impact on guards, inmates, and prison resources if the facility were to accommodate the asserted right; and (4) whether "ready alternatives" to the regulation exist. *Turner*, 482 U.S. at 89–91.

White challenges the defendants' confiscation of his publications under BOP Program Statement 5266.11, which allows a warden to reject a publication if "it is determined detrimental to the security, good order, or discipline of the institution." 28 C.F.R. § 540.71(b). But it "takes no imaginative dive" to identify the link between the Bureau's legitimate penological interest of maintaining institutional safety and limiting White's access to white nationalist materials, as he identifies them. *See Munson v. Gaetz*, 673 F.3d 630, 635 (7th Cir. 2012).

White's publications featured the ideology of skinheads, a white supremacist group that "embrace[s] violence and the threat of violence as a method of advancing their views." *United States v. Showalter*, 933 F.2d 573, 575 (7th Cir. 1991) (quoting district court's characterization). One *White Voice* newsletter, for instance, featured a "What is a Skinhead?" advertisement adorned with swastikas. *See Koutnik v. Brown*, 456 F.3d 777, 783 (7th Cir. 2006) (allowing confiscation of art with swastika because it is a symbol of white supremacist groups). Violent groups, like the skinheads, "serve to undermine prison security," *see Singer v. Raemisch*, 593 F.3d 529, 535 (7th Cir. 2010), and it is

well-recognized that maintaining security is a valid penological goal. *See Pell v. Procunier*, 417 U.S. 817, 827 (1974). Thus, limiting White's access to those publications was certainly related to the institution's legitimate safety and security interests.

The remaining *Turner* factors also weigh in favor of the defendants. White can exercise his First Amendment right by ordering publications without violent content, and he has identified no "obvious, easy alternatives" to confiscating the objectionable material that would not jeopardize the prison's security interest. *See Turner*, 482 U.S. at 90. Because the prison's mail-screening policy, as applied to White, was reasonably related to legitimate penological interests, dismissal was proper. *Cf. Thornburgh v. Abbott*, 490 U.S. 401, 416–18 (1989) (affirming constitutionality of 28 C.F.R. § 540.71(b)).

White raises two other arguments on appeal, but neither is persuasive. First, he contends that, even if a *Bivens* claim is unavailable, he also asserted a claim for injunctive and declaratory relief against the defendants—what he calls a "*Marbury* claim." That claim was originally against the BOP Director in his official capacity—making it a lawsuit "against the federal agency itself." *King*, 415 F.3d at 636. At screening, the district court determined that sovereign immunity barred the claim. Because White did not seek money damages, however, his claim against the BOP director was not barred and should not have been dismissed on that ground. *See Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988) (allowing suit for declaratory or injunctive relief against federal agency). But the error was harmless. White failed to state a First Amendment claim against Sloop and True, assuming one is cognizable, so he also could not have stated a claim against the BOP for maintaining the policy at issue.

Second, White argues that the district court applied the wrong standard of review to the magistrate judge's report and recommendation. Because White raised several objections to the magistrate judge's report, the district court reviewed it de novo. *See* FED. R. CIV. P. 72(b)(3). But White correctly notes that the portions of the report to which he did not object should have been reviewed for clear error. *See Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999). Although a delineation from the district court between objected-to and unobjected-to portions of the report would have been preferable, we see no error. The court dismissed the complaint based solely on the conclusion that *Abbasi* precludes *Bivens* actions for First Amendment claims. De novo review was appropriate because two of White's three objections—that the magistrate judge erred in finding that alternative remedies were available, and should have considered pre-*Abbasi* cases recognizing First Amendment *Bivens* claims—concern that same issue. (The third is irrelevant in light of the rationale for dismissal.) In any case, as

the objecting party, White could not have been harmed by the district court's application of a less deferential standard of review.

AFFIRMED